**196 So. 550**

**VENTA et al. v. FERRARA.**

**No. 35186.**

April 29, 1940.

Rehearing Denied May 27, 1940.

· Fred G. Veith, of New Orleans, for appellants.

John E. Jackson and Baldwin J. Allen, both of New Orleans, for appellee.

ODOM, Justice.

This case was before us in May, 1933. See Venta et al. v. Ferrara, 177 La. 433, 148 So. 670.

As stated in that opinion, the suit is a petitory action brought by plaintiffs to recover certain lots of ground situated in the City of New Orleans. Plaintiffs alleged that they owned the property, and set out their chain of title. They alleged that Philip Ferrara claimed to own the

property and was then in physical possession of it without title.

Ferrara in his answer denied that plaintiffs owned the lots, admitted that he was in possession of them, and alleged that he had acquired the property in good faith and for a valuable consideration from the Tulane Investment Company, Inc., by deed, notarial in form, on October 30, 1922, and that his deed was then recorded in the conveyance records. He further alleged that he purchased the property under full warranty of title and that, at the time the Tulane Investment Company, Inc., sold the lots to him, that company was in possession of them "with warranty of title".

Ferrara, the defendant, further alleged that, following his purchase of the lots, he took possession of them and in good faith erected two frame buildings on the lots and made other improvements to them, all at a total cost to him of $8,475, and that he had paid taxes on the property amounting to approximately $600. He prayed that plaintiff's demands be rejected, and that, in case it should be decreed that they were the owners of the lots, he should have judgment against them for the amount of the taxes paid and the value of the improvements which he had made. He called his vendor, the Tulane Investment Company, Inc., in warranty. In its answer to the call in warranty, the Tulane Investment Company, Inc., denied that plaintiffs were the owners of the property and alleged that it had purchased the lots under full warranty of title from Josiah Gross on Sep-

tember 11, 1922, under deed then of record. It in turn called Gross in warranty. Gross died in the meantime, and his widow and heirs answered the call in warranty. They alleged that Josiah Gross had purchased the lots at tax sale on October 9, 1918, the sale having been made by the tax collector for the unpaid taxes for the year 1917 due by Venta et als., the plaintiffs in this suit. They further alleged that Josiah Gross acquired valid title to the land.

Ferrara died while the suit was pending, and his widow and heirs were substituted as parties defendant. There was judgment in the lower court in favor of defendants, the heirs of Ferrara, decreeing them to be the owners of the property and recalling the calls in warranty.

Plaintiff appealed to this court. We reversed the judgment of the lower court as to the title and reinstated the calls in warranty, our decree reading in part [177 La. 433, 148 So. 672]: "the plaintiffs are decreed to be the owners of the property sued for, and the calls in warranty are reinstated to be adjudged when it is determined in the lower court whether or not and to what extent, if any, the defendant may recover for the value to the property of the improvements placed thereon by him and the sum of the taxes assessed against the property and paid by him during his possession and occupancy thereof."

There was involved in the suit not only the issue as to whether plaintiffs or defendants owned the property, but also the question as to whether the defend-

ants, in case of eviction, were entitled to recover the amount of taxes which they had paid and the value of the improvements. We decided the issue as to the title but did not pass upon the other issues involved. The reason for our failure to pass upon this question was that the testimony in the record relating to this point was not sufficient to support a decree, and the case was remanded.

At the second hearing of the case in the district court, very little testimony was introduced. At the opening of the trial on the remand, counsel for plaintiffs informed the court that his clients elected "to demand the demolition of the works, plantations and edifices that may have been erected by the Defendant" on the property, and that they reserved the right "to apply for rents, for occupancy of the property in question from the date of judicial demand", etc. Counsel for plaintiffs then called one witness, who testified that such buildings as defendant had erected upon the property had added nothing whatever to its value. Plaintiffs closed their case.

Counsel for defendants called Mr. Reimann as a witness. He stated that he was a contractor, that he had examined the buildings erected on the property by defendants, and that in his opinion they were now worth approximately $7,500, less depreciation of 25 per cent. He testified that he had examined the buildings carefully only a few days prior to the date on which he was called to testify. The other witness called by defendant was not questioned as to the improvements.

There was judgment in favor of the plaintiffs and against the defendants, dismissing defendants' demand for the value of improvements "but granting unto defendants the right to remove improvements placed upon said property within a reasonable time". There was also judgment in favor of defendants and against the plaintiffs for taxes paid, amounting to $143.76. From the judgment rendered, defendants appealed.

The question whether defendants were possessors of the property in good faith is necessarily involved in the suit and must be decided. If defendants were possessors in bad faith, their only right is to remove their materials in case the plaintiffs elect not to keep the improvements. On the other hand, if they were possessors in good faith, plaintiffs have no right to demand the demolition of the buildings, but have their choice "either to reimburse the value of the materials and the price of workmanship, or to reimburse a sum equal to the enhanced value of the soil". Fourth paragraph, Article 508, Revised Civil Code; Voiers v. Atkins Bros., 113 La. 303, 36 So. 974 (see opinion on rehearing beginning on page 333, of 113 La., on page 985 of 36 So.); Ruth v. Buwe, 185 La. 204, 168 So. 776.

The trial judge in his written opinion did not state in so many words that he thought the defendants were possessors in bad faith. But he evidently thought so, because he granted to them only such right as the law accords to possessors in bad faith, which is to remove such works

as they may have erected on the property and which the plaintiffs do not elect to keep. The judgment granted to the defendants "the right to remove improvements placed upon said property within a reasonable time".

The trial judge in his written opinion stated that from an examination of the record "it is self evident that Gross did not acquire title to the property by virtue of his tax deed, and, that being so, how then could the defendant be such a holder of the property as would warrant him, in law, in recovering any sum whatsoever for the improvements placed upon the property? The very factor which would cause to exist the right to recover for such improvements is absent here".

The ruling of the judge is erroneous. As relates to the question of good faith, it is not material to inquire whether Gross acquired title at the tax sale. The material question is whether Philip Ferrara purchased the property in good faith from the Tulane Investment Company, Inc., believing that company had good title, and whether he took and held possession in good faith under the title which he acquired.

The defendants were unquestionably possessors in good faith. Philip Ferrara purchased the property from the Tulane Investment Company, Inc., on October 30, 1922—four years after Gross acquired it at tax sale—, for a cash consideration of $1,250, the deed reciting that the property was sold and delivered "with all legal warranties and with full subroga-

tion in and to all the rights and actions in warranty which said vendor has or may have against all preceding owners and vendors". The deed is in the usual form, containing all the stipulations ordinarily found in cash deeds with full warranty. The instrument is "sufficient in terms to transfer property".

The testimony shows that, soon after Philip Ferrara purchased the property and recorded his deed in the conveyance records, he took possession of the lots, which were then without improvements of any character or description. He filled in the lots with earth at a cost to him of $300. He then erected on the property two frame buildings, one of which cost $3,500 and the other $4,500. He built sidewalks at an expense of $175. As soon as one of the buildings was completed, he moved into it with his family and occupied it as a residence until the date of his death, and thereafter his widow and children continued to occupy it as a residence for a number of years. There is nothing to show—in fact there is not the slightest indication—that he acted otherwise than in perfect good faith. In fact, all the circumstances show that he was in good faith. He paid $1,250 cash for the property and thereafter improved it at an expense exceeding $8,000 and paid the taxes regularly. He possessed and occupied the property as owner, and there is nothing in the record to show that any defects in the title were ever pointed out or made known to him. Clearly the first intimation that he had that these plaintiffs were claim-

ing title to the property was when they filed suit against him in 1927, five years after his purchase of the property. All of the improvements were made on the property prior to the date on which the suit was filed.

There are two articles of the Revised Civil Code specifically relating to the question as to who are possessors in good faith, Articles 503 and 3451.' These articles read as follows:

"Art. 503. Bona Fide Possessor. He is bona fide possessor who possesses as owner by virtue of an act sufficient in terms to transfer property, the defects of which he was ignorant of. He ceases to be a bona fide possessor from the moment these defects are made known to him, or are declared to him by a suit instituted for the recovery of the thing by the owner."

"Art. 3451. Possessor in Good Faith. The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another."

Philip Ferrara purchased this property from the Tulane Investment Company, Inc., under an act sufficient in terms to transfer property and from the date of his purchase possessed the property as owner by virtue of that act. He was ignorant of any defects in the title, and the defects found to exist by this court were not made known to him and were not declared to him by suit instituted for the recovery of the property until after he had spent a sum exceeding $8,000 in improving the property. He had just reason to "believe himself the master of the thing" which he possessed. When he bought the property, he had reason to suppose that it belonged to the one who sold it to him. He did not cease to be a possessor in good faith until the present suit was filed, which, as we have stated, was after he had improved the property.

Article 3452 of the Revised Civil Code says that "The possessor in bad faith is he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective". Philip Ferrara did not assume the quality as master of the property when he well knew that he had no title to the thing. On the contrary, he took the property under conditions described in Articles 503 and 3451 of the Code.

According to Article 503 of the Code, one ceases to be a bona fide possessor from the moment that the defects in his title "are declared to him by a suit instituted for the recovery of the thing by the owner". Therefore, Philip Ferrara ceased to be a possessor in good faith on the date service of this suit was made. And counsel for plaintiffs argue that, because Ferrara defended the suit, claiming that he owned the property, and because the property was finally decreed to belong to plaintiffs, his status as a possessor in bad faith was fixed as of the date on which he originally acquired

the property, and they cite in support of their argument Nabors Oil & Gas. Co. v. Louisiana Oil Refining Co., 151 La. 361, 91 So. 765. In that case the court, after quoting Article 503 of the Code, stated that the law, as laid down therein, presupposed the existence of defects in the title or the bringing of a suit by the owner, and that the responsibility of determining whether defects existed was thrown upon the possessor "from the moment that he is informed that his title is defective, or that a suit is brought by one asserting ownership" (151 La., at page 384, 91 So. at page 773). The court then stated: "and if, then, acting upon his own judgment, or upon the advice of others, he refuses to surrender the property, and it is wrested from him at end of a lawsuit, his status as a possessor in bad faith becomes established, and, where immovable property is involved, his liability is determined in accordance with the following provisions of the Civil Code, to wit."

The interpretation which counsel have placed upon this expression found in the opinion of the court is erroneous. What the court held was that, when a suit is brought by one asserting ownership against the one in possession and when the possessor refuses to surrender the property and it is wrested from him at the end of the lawsuit, the defendant's status as a bad-faith possessor is established as of the date of the institution of the suit, and thereafter he is a possessor in bad faith. If the court intended to hold as counsel for plaintiffs contend that it did, such holding would be in direct conflict with the very article of the Code which the court had just quoted, which provides that one ceases to be a bona fide possessor from the moment the defects in his title are made known to him "or are declared to him by a suit instituted for the recovery of the thing by the owner".

One may possess property in perfect good faith for a number of years, even though there are, as a matter of law, defects in his title, and, when he does, he ceases to be a possessor in good faith only from the moment these defects are made known to him or a suit is filed against him for the recovery of the property. That is what the Code says.

The defendants being possessors in good faith, plaintiffs have no right to demand the demolition of the houses built upon the property by defendants, but plaintiffs have their choice "either to reimburse the value of the materials and the price of workmanship, or to reimburse a sum equal to the enhanced value of the soil" (Fourth paragraph, Article 508, Revised Civil Code).

We find it necessary to remand this case again to the district court in order that plaintiffs may elect whether they will keep the useful improvements and reimburse the value thereof, or reimburse a sum equal to the enhanced value of the soil. If the plaintiffs elect to keep the useful improvements placed upon the property by defendants, the burden will be upon defendants to establish their claim for improvements, according to the rules laid down by the Code. If

the plaintiffs elect to pay the enhanced value of the soil, they must show by evidence what the enhanced value is. Foster v. Meyers, 117 La. 216, 41 So. 551, and Hutchinson v. Jamison, 38 La.Ann. 150. The calls in warranty should be reinstated. There should be an adjustment of the amount of taxes which defendants are entitled to recover.

For the reasons assigned, the judgment of the district court is set aside; the defendants are decreed to be possessors in good faith, the calls in warranty are reinstated, and it is ordered that the case be remanded to the district court in order that there may be an adjudication as to the calls in warranty, and ordered that the case be proceeded with otherwise in accordance with the views herein expressed; costs of this appeal to be paid by plaintiffs, all other costs to await the final decree.

O'NIELL, C. J., does not take part.