DEOGRACIAS VIERA SOSA, Plaintiff and Appellee, *v.* RAMÓN ARIZMENDI ET AL., Defendants and Appellants.

No. 10618. Argued September 1, 1952.—Decided November 6, 1952.

*Pedro E. Anglade* for appellant. *Juan Enrique Géigel, Guillermo Silva,* and *Luis F. Cuyar,* for appellee.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

We are concerned here with three consolidated appeals from three judgments rendered by the San Juan Section of the former District Court of Puerto Rico in actions brought

by Deogracias Viera Sosa against Ramón Arizmendi and against Epifanio Vega to enforce the right of accession.[1] These cases present, substantially, the question of the compensation or indemnity that plaintiff should pay to the defendants as a precondition to the return to Viera Sosa of three houses constructed in good faith by the defendants on lots belonging to the plaintiff.

After the cases were heard on their merits, in the first one in which Ramón Arizmendi was the only defendant, the lower court made certain findings of fact to the effect that the plaintiff was the owner of the lot on which defendant had erected a house in good faith; that defendant's house was constructed about the year 1930 and that "taking into consideration the cost of the materials and labor employed in its construction in 1930, the building was made at a cost of TWO HUNDRED AND FIFTY-ONE DOLLARS AND TWENTY CENTS ($251.20)." The lower court further stated, as a finding of fact:

"That from the date of the construction of said house in 1930 until the present year, 1950, the house has depreciated at the rate of four per cent (4%) per year, eighty per cent (80%) of its value, which, calculated on the cost of the house which is TWO HUNDRED AND FIFTY-ONE DOLLARS AND TWENTY CENTS ($251.20), would actually be FIFTY DOLLARS AND TWENTY-FOUR CENTS ($50.24). Taking into consideration the cost of the materials used in the building as well as the benefit and advantage that defendant derives from said house, it is worth today ONE HUNDRED DOLLARS ($100)."

It was this amount of $100 that the lower court ordered the plaintiff to pay to the defendant as a precondition to the return of the house.

In the second case involving Ramón Arizmendi and his tenants, the lower court made similar findings with the exception of the cost of construction of the second house in 1930,

---

[1] The three cases originated in the former Municipal Court of Río Piedras. One of the actions was brought against Ramón Arizmendi individually, the second against Arizmendi himself and his tenants as to a second house, and the third, against Epifanio Vega as to a third house.

which it fixed at ONE HUNDRED AND THIRTY-FOUR DOLLARS AND THIRTY-ONE CENTS ($134.31)" and of the depreciation, which it fixed at $100.73, the difference being "the present value of THIRTY-THREE DOLLARS AND FIFTY-EIGHT CENTS ($33.58)." The lower court raised this sum to $125 due to "the benefit and advantage that defendant derives from said house."

With respect to the house built by Epifanio Vega, the San Juan court fixed the cost of materials and workmanship in 1930 at $226, the depreciation at $113 and the present value at $200, due also to "the benefit and advantage that defendant derives from said house."

The amounts thus fixed by the lower court as compensation coincided with the amounts deposited in court by the plaintiff and alleged by him to be the amount of the proper compensations.

The defendants have appealed to this Court from those judgments and allege, in brief, that the lower court committed manifest error in fixing said amounts as representing the value of the houses; in giving more credit to the testimony of the expert presented by the plaintiff as to said value or as to the construction cost than to the testimony of the experts or witnesses of the defendants, and in not declaring that the construction cost should be computed on the basis of the present situation instead of that of 1930. Defendants also allege that plaintiff was guilty of suppression of evidence in failing to call to the witness stand Juan Pacheco who, according to plaintiff's statements to the court, had examined the houses, and they further allege that the lower court erred in admitting oral evidence as to plaintiff's title over the lots. Appellants also allege that the lower court "was moved by passion, prejudice and partiality in determining the value of the buildings and in deciding the cases of Arizmendi."

 We have thoroughly examined the transcript of the evidence and appellants have not proved that the lower court committed manifest error in its finding as to the cost of the materials and of labor in 1930. *Ugarte* v. *Alvelo*, 72 P.R.R.

415; *Maldonado* v. *Rodríguez*, 58 P.R.R. 778; Rule 52 (*a*) of the Rules of Civil Procedure. Nor is there any showing in the record that the lower court was moved by passion, prejudice or partiality. Likewise, the allegation that plaintiff suppressed evidence lacks merit inasmuch as the fact that Juan Pacheco did not testify as plaintiff's witness does not raise any inference or presumption against him, in view of the fact that Pacheco was never in court as plaintiff's witness, nor formally offered as such. The defendants admitted in their answers that plaintiff was the owner of the lots where the houses now stand and, therefore, the court *a quo* did not err in admitting oral evidence on that point.

However, the lower court committed error in taking into consideration the depreciation as an operative factor in fixing the compensation in these cases; in considering the additional element of "useful advantage of the houses" and in not determining the compensation exclusively on the basis of the costs of the materials used in the construction of the houses, as well as the value of the labor.[2]

The question of the inclusion of the depreciation element as an operative factor for determining the amount to be paid to one who builds in good faith in cases of accession has not yet come directly to this jurisdiction. We shall examine the statutory provisions bearing on this point.

Sections 297, 382 and 383 of our Civil Code textually provide as follows:

"Section 297.—The owner of the land which has been built upon, sown, or planted in good faith, has the right to appropriate as his own, the work, sowing or planting, by previously paying the indemnity specified in sections 382 and 383 of this Code, and

---

[2] Appellants have not raised directly any question as to the depreciation and the element of useful advantage, and they presented no objection in the lower court as to this evidence. However, their brief presents the question as a whole of the total amount of the compensation that should be granted and we believe that we may, and should, consider and decide all the problems and factors referring to the compensation that should be fixed as a prerequisite to the return of the houses.

to oblige the person who has built or planted to pay him the value of the land, and the person who sowed, to pay the corresponding rent."

"Section 382.—Necessary expenses are refunded to every possessor; but only the possessor in good faith may retain a thing until such expenses are made good to him.

"Useful expenses are refunded to the possessor in good faith with the same right of retention, it being at the option of the party who has defeated him in his possession to refund the amount of the expenses or to pay the increase in the value of the thing in consequence of such expenses.

"Section 383.—Expenses incurred purely for luxury or mere pleasure are not returnable to the possessor in good faith; but he may remove the ornaments with which he has embellished the principal thing if it suffer no injury thereby, and if his successor in the possession does not prefer to refund the amount expended."

Under the above copied § 297 the owner of the lot where the house is built in good faith, has the right to pay the indemnity specified in §§ 382 and 383 or to deliver the land with the house to the one who built, upon the latter paying the value of the land. In this case, the plaintiff has exercised that option by requiring the delivery of the house and of the land upon paying the compensation specified in § 382. In resorting to the provisions of this latter Section the plaintiff, as owner of the land, had a second option, that is, he could pay to the possessor or to the builder in good faith the necessary and useful expenditures incurred by the latter or pay the increase in value which the thing had acquired by reason of said expenditures, that is, in cases of buildings, the increase in value of the land or lot produced by the fact itself that the building was made. This increase in value of the land should be determined by the difference, established upon the delivery or return, between the value of the land with the house and the value of the lot before the house was erected thereon. In 4 Manresa, *Comentarios al Código Civil Español*, 6th ed.. pp. 316–317, the following is stated:

"1st. *Useful Improvements.—a) Possessor in good faith.—*

Pursuant to the second paragraph of § 453, the useful expenditures shall be paid to the possessor in good faith, the person who has defeated him in his possession having the option of refunding the amount of such expenditures, or paying the increase in value which the thing has acquired by reason thereof. It is an alternative obligation, and its election rests with the debtor or owner. In this way the law marks a distinction as to the effects produced by the necessary and by the useful expenditures; the former may be paid always; the latter, only if they exist and the person prevailing in the possession chooses to pay the amount of the expenditures instead of the increase in value acquired by the thing by virtue thereof. This increase in value must be appraised at the time of delivery and it can not be computed without first knowing the value the thing had prior to the improvement; but only the increase due to the improvement itself, and not to other accidental circumstances, should be taken into consideration.

"It is self-evident that the owner holds an advantageous position, because there are improvements which require little expense and are of great benefit, while others are very expensive and of little use, and the owner may always choose to pay the lesser amount; but it is true that if the possessor had continued in the possession, he would have only enjoyed the benefit derived therefrom and if it is of considerable value he could only expect the refund of the expenses had.

"The judgment of the Supreme Court of April 9, 1904, declares that although the useful expenditures incurred in the thing possessed should be paid to the possessor in good faith, it is necessary not only that it be so requested, but also that it be shown somehow that said expenditures were actually made, even though the net amount thereof may remain for the execution of the judgment.

"Pursuant to the decision of March 17, 1891, of the Court of Contentious Proceedings where the owner does not make use of the option granted him under § 453, it is only fair to pay the amount of the useful expenditures or improvements made in the property."

In 3 Sánchez Román, *Derecho Civil*, 2d ed., p. 448, it is said:

"*c. Expenses incurred by reason of the so-called necessary,*

*useful and voluntary improvements: possessor in good faith.*—
Pursuant to § § 453 and 454 the rule governing this particular
is the same as that of the preceding law, to wit: the *necessary*
and the *useful* expenses shall be paid to the possessor in good
faith, with the right of *retention* of the thing until said expenses
are refunded. As to the *useful* expenses, the person prevailing
in the possession, by reason of a better title as owner or posses-
sor, may *choose* either to reimburse the amount of said expenses
or to pay the increase in value acquired by the thing by reason
thereof; which option is undoubtedly granted by precaution in
case the increase in value acquired by the thing is less than the
amount of the useful expenses. . . . . ."

In Louisiana, the fourth paragraph of § 508 of the Revised
Civil Code specifically provides that the owner of the land
has the choice either to reimburse to the person who built in
good faith the value of the materials and the price of work-
manship, or to reimburse a sum equal to the enhanced value
of the soil. *Venta* v. *Ferrara*, 196 So. 550, 554.

It has been generally determined in this jurisdiction that
the indemnity that the owner of the land must pay to the
person who built in good faith as a prerequisite to the delivery
of the land (with the house) should be measured by the cost
of the materials used in the construction of the house or build-
ing, as well as the labor cost. *Ramos* v. *People*, 70 P.R.R.
588, 594; *García* v. *Stella*, 69 P.R.R. 911; *Figueroa* v. *Rodrí-
guez*, 68 P.R.R. 248; *Villamil* v. *Camacho*, 64 P.R.R. 782;
*Rivera* v. *Santiago*, 56 P.R.R. 361; *Carrasquillo* v. *Maldo-
nado, Int.*, 56 P.R.R. 375. This view corresponds to the defi-
nition of the useful expenditures to be refunded to the posses-
sor or builder in good faith if the first alternative of the
option permitted by the aforesaid § 382 of our Civil Code is
exercised. The nature of the elements involved if the owner
of the land chooses to pay the increase in the value of the
land by reason of the construction, was not considered in
any of the cases cited, inasmuch as in those cases the option
was not exercised in such manner.

At any rate, it is clear that when the owner of the land

prefers to pay the useful expenditures to the person who built in good faith by refunding the cost of the materials and workmanship, it implies the restitution to the builder of the expenditures originally incurred by the latter in constructing the building, in order to compensate him justly for the expenses actually incurred by him. The indemnity is determined by the situation of the expenses originally prevailing when the house was built, as against the second alternative of the option, namely the refunding of the increase in the value of the land, which is determined in accordance with the situation prevailing when delivery is ordered by the court.

When the owner of the land chooses to refund the original amount of the materials and labor, such indemnity should not be reduced by the depreciation of the building. In the first place, § 382 defines the indemnity in the sense of including actual expenditures only, without permitting a reduction of such amount for the reason that the house depreciated. Consideration of said depreciation element in case the plaintiff chooses to compensate the damages is not authorized by the aforesaid statutory provision. Depreciation does not constitute a useful expenditure that is actual and effective, under § 382 of our Civil Code.[3] In the second place, consideration of such element in order to reduce the proper compensation is equivalent to establishing the indemnity on the basis of the situation prevailing at the time of the delivery, and not on the basis of what the person who built did when the construction was originally built. From the viewpoint of justice and equity, it would be unfair to deprive a person

---

[3] We do not have before us a case of fixation of rates of a public utility or of condemnation or taxes, in which the element of depreciation would be relevant. Section 382 does not mention either the recovery of damages in which case depreciation might be an applicable element. For example, under § 230 of the Code of Civil Procedure, in an action to recover the possession of personal property, judgment may grant possession and damages for the retention. Depreciation of personal property is a proper element of such damages. *Spencer, Kennelly, Ltd.* v. *Bk. of Amer.*, 19 Cal. 2d 586. But § 382 mentions expenditures and not damages for the retention.

who built in good faith from part of the expenses actually incurred by him because the building subsequently depreciated. He would not be adequately compensated. On the other hand, it could not be alleged that the builder would be obtaining an unjust enrichment at the expense of the owner of the land because of the fact that the latter is obliged to pay a higher value than the depreciated value he receives. This would be relevant if the indemnity were defined by the situation prevailing when the property is delivered. Section 328 itself excludes such possibility, referring exclusively to original expenditures, namely, to the cost of materials and workmanship.[4]

What we have said as to depreciation is applicable to the factor which, erroneously also, the court used as to the alleged "advantage and benefit that the defendant has derived from the house." The first choice granted by § 382 (useful expenditures of the possessor), does not authorize the consideration of such factor, as an element of expenditures. The builder must be compensated for his expenditures, and he can not be obliged to consider as such compensation the benefits he has derived. Section 382 referred to useful expenditures in order to distinguish them from the expenses incurred for luxury or mere pleasure determined in § 383. Manresa, *op. cit.*, pp. 296, 297, 298; Sánchez Román, *op. cit.*, pp. 446, 448.

---

[4] Although not directly in point, it is proper to indicate that § 385 of the Civil Code determines that improvements caused by nature or time redound to the benefit of the person who has succeeded in acquiring possession, but § 386 establishes that the possessor in good faith is not responsible for the deterioration or loss of the thing, unless he has acted with fraudulent intent. The "thing" is the land but those Sections disclose the establishment of a just reciprocity between the owner and the possessor, the principle *qui sentit commodum sentire debet et onus*, namely, he who enjoys the advantage ought to bear the burden, being applicable. The owner has the opportunity to pay the lesser compensation, or to pay the original cost when the latter is less than the actual value. He should also assume the consequences of depreciation. He should not be in a position to reject payment of the actual value of the building and at the same time to insist on the actual situation for the sole purpose of computing the depreciation in his favor.

The requirement that they be useful does not eliminate the necessity that they be actual expenses.

We have mentioned the second alternative of the option granted to the owner of the land by § 382 (different from the option granted in § 297, to pay the indemnity or to oblige the person who has built to pay the value of the land), that is, to refund to the builder the increase in the value of the land resulting from the building. That alternative involves several factors, as for example, the value of the land prior to the building and its subsequent value as a result of the construction. That situation demands the consideration of elements prevailing at the time of the delivery. Manresa, *op. cit.*, p. 316. Possibly in that case there might be considered the elements of valuation (and not of expenditures as in the first alternative) referring to the depreciation and useful advantage of the house. However, it must be evident from the record that the owner of the land, namely, the plaintiff, exercised the option availing himself of the second alternative —Manresa, *op. cit.*, p. 317—and that he has set it forth formally, in order that the other party may have the opportunity to prepare himself adequately as to the elements of proof involved in said second alternative of the option. *Venta* v. *Ferrara, supra; Foster* v. *Meyers*, 117 La. 216, 41 So. 551; *Hutchinson* v. *Jamison*, 38 La. Ann. 96. If the plaintiff has not exercised the option thus or if there is no evidence in the lower court as to the enhanced value of the land, by presenting evidence of the cost of the materials and workmanship, the judgment should refer exclusively to said cost of the materials and workmanship. *Hutchinson* v. *Jamison, supra;* Manresa, *op. cit.*, p. 317. In the cases before us, the plaintiff, in his complaints, points out, offers and deposits certain amounts of money that, according to him, cover the value or price of the house. No evidence as to the value of the land was presented at the hearing in the lower court. Under those circumstances the controversy should be exclusively limited to the original cost of the materials and

labor, and the depreciation or the "useful advantage" of the house should not be considered at all.

In *People* v. *Carrasquillo*, 58 P.R.R. 178, 182-3, the compensation granted was the amount of the valuation of a house based on the cost of the materials, plus labor, less depreciation. Although the house had been built in good faith on another's land, that case involved a complaint in a condemnation suit and not an action to enforce the right of accession, and therefore, it is not applicable to the case at bar. This Court held in the *Carrasquillo* case that an action of unlawful detainer did not lie as to a house built on another's land insofar as the restitution of the house upon paying the proper indemnity was concerned, but that it did not bar a condemnation proceeding. There was no discussion whatsoever as to whether in an action to enforce the right of accession under §§ 297 and 382 of the Civil Code it is proper to include depreciation as a relevant factor.

In a judgment rendered on March 4, 1892—71 *Jur. Civil* 297, 305—the Supreme Court of Spain decided as follows:

"Whereas the indemnity due to the possessor in good faith who building anew or otherwise improves the property of another, is not determined by the cost of the work, except insofar as said work, being necessary or useful, is maintained without impairment and exists at the time the true owner enters in possession thereof, because otherwise the former might be unjustly enriched to the prejudice of the latter; and thereby this rule of law as well as Act 38 of the *Digesto De Reivindicatione,* invoked in the third ground of the appeal, is violated, upon the petitioners being ordered to pay all the expenses incurred by La Peninsular, without deducting the deterioration suffered by the houses constructed by said *Sociedad* on the revendicated land."

However, that judgment was entered under the local legislation of Catalonia, based in turn on Roman Law and not under the Spanish Civil Code. Be it as it may, the views laid down by that judgment imply a consideration of values at the time of the delivery, which is contrary to the juridical

views that should prevail. We do not agree with the doctrine enunciated in the aforesaid judgment.

Incidentally, in *King* v. *Fernández et al.*, 33 P.R.R. 722, 732-3, this Court stated the following:

"In view of all the foregoing, it simply devolves on the plaintiff—in the district court, of course—definitely to elect to pay the price of the house at its present market value or else require the defendant to pay him the actual price of the lot. We are inclined to believe, after consideration, that we were mistaken in saying, *obiter*, in our opinion of November 6, 1924, that defendant could recover the market value of the house. What the defendants could recover is stated in sections 455 and 456 of the Civil Code, *provided the same does not exceed the actual market value. ...*" (Italics ours.)

The last phrase expressed as a *dictum*, indicating that compensation should not exceed the actual market value of the house, finds no support in the provisions of § 382 of the Civil Code, and embodies a principle contrary to the doctrine established in subsequent cases of this Court, determining compensation on the basis of the cost of the materials and workmanship. Such principle ("actual market value") might only be applicable in connection with other factors, should a controversy be adequately raised concerning the enhanced value of the property as a result of the building of the house.

The judgment appealed from will be modified so that in the three cases involved here the defendants be awarded compensation based on the original cost of the materials and labor, that is, that in the case of the complaint filed against Ramón Arizmendi (No. 49-2851 in the lower court), the judgment should order the plaintiff to pay to the defendant the amount of Two Hundred and Fifty-one Dollars and Twenty Cents ($251.20), as a condition to the delivery of the corresponding house; in the case against Ramón Arizmendi and others (No. 49-2856 in the lower court), the previous payment, by judgment, should amount to One Hundred and Thirty-four Dollars and Thirty-one Cents ($134.31); and in the case

48

against Epifanio Vega (No. 49–2853 in the lower court), the previous payment, by judgment, should amount to Two Hundred and Twenty-six Dollars ($226). As thus modified the judgment will be affirmed.

Mr. Justice Sifre did not participate herein.