DEOGRACIAS VIERA SOSA, demandante y apelado, *v.* RAMÓN ARIZMENDI ET AL., demandados y apelantes.

Número 10618.
*Sometido:* 1 de septiembre de 1952. *Resuelto:* 6 de noviembre de 1952.

*Pedro E. Anglade,* abogado del apelante; *Juan Enrique Géigel, Guillermo Silva* y *Luis F. Cuyar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

En este caso están consolidadas tres apelaciones contra tres sentencias dictadas por la Sección de San Juan del anterior Tribunal de Distrito de Puerto Rico, en las correspondientes acciones de accesión interpuestas por Deogracias Viera Sosa contra Ramón Arizmendi y contra Epifanio Vega.(1)   Lo que está envuelto, sustancialmente, en los litigios es la compensación o indemnización que debe pagar el demandante a los demandados como condición previa a la restitución a Viera Sosa de tres casas construídas de buena fe por los demandados en solares pertenecientes al demandante.

Después de haberse celebrado las vistas correspondientes en sus méritos, en el primer caso en que estaba envuelto únicamente Ramón Arizmendi como demandado, el tribunal a quo formuló unas conclusiones en cuanto a los hechos al efecto de que el demandante era el dueño del solar donde el demandado había construído una casa de buena fe; que la casa del demandado fué construída allá para el año 1930 y que "con-

---

(1) Los tres casos se habían originado en la antigua Corte Municipal de Río Piedras.   Una de las acciones se presentó contra Ramón Arizmendi individualmente, la segunda, contra el propio Arizmendi y sus inquilinos, con respecto a una segunda casa, y la tercera, contra Epifanio Vega con respecto a una tercera casa.

siderando el costo de los materiales y el valor de la mano de obra que se empleó para su construcción en el año 1930, la edificación se hizo a un costo de Doscientos Cincuentiún Dólares Veinte Centavos ($251.20)". Siguió exponiendo el tribunal inferior lo siguiente, como una conclusión de hecho:

"Que desde la fecha de la construcción de dicha casa en 1930 hasta el carriente año, 1950, la casa ha depreciado a razón de cuatro (4) por ciento por año, un ochenta (80) por ciento de su valor, que calculado sobre el costo de la misma ascendente a Doscientos Cincuentiún Dólares Veinte Centavos ($251.20), su valor actual sería de Cincuenta Dólares Veinticuatro Centavos ($50.24). Teniendo en cuenta el costo de los materiales empleados en la edificación, así como la utilidad y provecho que deriva el demandado de dicha casa, la misma tiene un valor hoy día de Cien Dólares ($100)."

Esta cantidad así fijada de $100 fué la que se ordenó al demandante que pagase al demandado como condición previa a la restitución de la casa.

En el segundo caso en que estaban envueltos Ramón Arizmendi y sus inquilinos, el tribunal a quo formuló conclusiones de hecho similares con excepción del costo de construcción de la segunda casa en el año 1930, que fijó en "Ciento Treinticuatro Dólares Treintiún Centavos ($134.31)", de la depreciación, que fijó en $100.73, quedando un "valor actual de Treintitrés Dólares Cincuentiocho Centavos ($33.58)." El tribunal inferior elevó esa suma a $125 debido a "la utilidad y provecho que deriva el demandado de dicha casa."

Con respecto a la casa edificada por Epifanio Vega, el tribunal de San Juan fijó el costo de los materiales y de la mano de obra en el 1930 en la suma de $226, la depreciación en $113 y el valor actual en $200, debido también a "la utilidad y provecho que deriva el demandado de dicha casa."

Las sumas así fijadas por el tribunal inferior como compensación coincidían con las sumas consignadas en corte por el demandante y alegadas por él como cuantía de las indemnizaciones correspondientes.

Los demandados han apelado de esas sentencias para ante este Tribunal alegando, en síntesis, que el tribunal inferior erró en forma manifiesta al fijar tales cantidades como representativas del valor de las casas; al darle mayor crédito al testimonio del perito presentado por el demandante en cuanto a tal valor o en cuanto a los costos de construcción que al testimonio de los peritos o testigos de los demandados, y al no dictaminar que los costos de construcción debían computarse a base de la situación actual y no la del año 1930. También se alega por los demandados que los demandantes incurrieron en un acto de supresión de prueba al no presentar como testigo a Juan Pacheco, quien, según informó el demandante a la corte, había examinado las casas, y exponen además los demandados que la corte inferior erró al admitir prueba oral sobre el título del demandante sobre los solares. También alegan los apelantes que la corte inferior "actuó movida por pasión, prejuicio y parcialidad al determinar la valoración que le dió a las edificaciones y al resolver los casos de Arizmendi."

Hemos examinado detenidamente la transcripción de evidencia y no se nos ha demostrado por los apelantes que sea claramente errónea la conclusión de hecho que formuló el tribunal a quo en cuanto al costo de los materiales y la mano de obra en el año 1930. *Ugarte* v. *Alvelo*, 72 D.P.R. 443; *Maldonado* v. *Rodríguez*, 58 D.P.R. 778; Regla 52(*a*) de las Reglas de Enjuiciamiento Civil. Tampoco surge de los autos indicio alguno de que el tribunal inferior haya sido movido por pasión, prejuicio o parcialidad. Tampoco hay base para la alegación de que el demandante suprimió prueba, ya que el hecho de que Juan Pacheco no haya declarado como testigo del demandante no levanta inferencia o presunción alguna en su contra, en vista de que Pacheco nunca estuvo en corte como testigo del demandante, ni fué ofrecido formalmente como tal. Los demandados admitieron en sus contestaciones que el demandante era el dueño de los solares donde

están enclavadas las casas y, por lo tanto, el tribunal a quo no erró al admitir prueba oral sobre tal extremo.

■■ Sin embargo, el tribunal inferior incurrió en error al considerar la depreciación como un factor relevante en la fijación de la indemnización en estos casos; al considerar el factor adicional de "provecho útil de las casas" y al no determinar exclusivamente la indemnización a base del costo de los materiales utilizados en la construcción de las casas, así como el montante de la mano de obra. (²)

La inclusión del factor de depreciación como elemento relevante en cuanto a la cuantía a ser pagada a un constructor de buena fe en casos de accesión no ha sido aún discutida directamente en esta jurisdicción. Examinemos las disposiciones estatutarias aplicables.

Los artículos 297, 382 y 383 de nuestro Código Civil determinan textualmente lo siguiente:

"Artículo 297.—El dueño del terreno en que se edificara, sembrare o plantare de buena fe, tendrá derecho a hacer suya la obra, siembra o plantación, previa la indemnización establecida en los artículos 382 y 383 de este Código, o a obligar al que fabricó o plantó, a pagar el precio del terreno, y al que sembró, la renta correspondiente."

"Artículo 382.—Los gastos necesarios se abonan a todo poseedor; pero sólo el de buena fe podrá retener la cosa hasta que se los satisfagan.

"Los gastos útiles se abonan al poseedor de buena fe con el mismo derecho de retención, pudiendo optar el que le hubiese vencido en su posesión, por satisfacer el importe de los gastos o por abonar el aumento de valor que por ellos haya adquirido la cosa."

"Artículo 383.—Los gastos de puro lujo o mero recreo no son abonables al poseedor de buena fe; pero podrá llevarse los

(²) Los apelantes no han planteado directamente cuestión alguna en cuanto a la depreciación y el factor de provecho útil, y no formularon objeción alguna en la corte a quo en cuanto a esa prueba. Sin embargo, su alegato plantea la cuestión global de la cuantía total de la indemnización que deba ser concedida y consideramos que podemos, y debemos, considerar y resolver todos los problemas y factores que se refieran a la indemnización que deba fijarse como condición previa a la restitución de las casas.

adornos con que se hubiese embellecido la cosa principal si no sufriere deterioro, y si el sucesor en la posesión no prefiriese abonar el importe de lo gastado."

Bajo el transcrito artículo 297, el dueño del solar donde se edifique la casa de buena fe, tiene la opción de pagar la indemnización señalada bajo los artículos 382 y 383 o entregarle el terreno, con la casa, al constructor, pagando este último el precio del terreno. En este caso, el demandante ha ejercitado esa opción requiriendo la entrega de la casa y del terreno, previo el pago de la indemnización señalada en el artículo 382. Al acogerse a las disposiciones de este último artículo, el demandante, como dueño del terreno, tenía una segunda opción, o sea, él podía abonar al poseedor o constructor de buena fe los gastos necesarios y útiles hechos por este último, o podía abonar el aumento de valor que en virtud de tales gastos hubiese adquirido la cosa, o sea, en casos de edificaciones, el aumento en el valor del terreno o solar producido por el hecho en sí de que se hizo la edificación. Ese aumento en el valor del terreno debe determinarse por la diferencia, comprobada al hacerse la entrega o restitución, entre el valor del terreno con la casa y el valor anterior del solar cuando aún o se había edificado la casa. En 4 Manresa, Comentarios al Código Civil Español, 6ta. ed., págs. 316–17, se dice lo siguiente:

"1ro. *Mejoras útiles.*—a) *Poseedor de buena fe.*—Según el párrafo 2do. del artículo 453, los gastos útiles se abonan al poseedor de buena fe, pudiendo optar el que le hubiese vencido en la posesión por satisfacer el importe de los gastos, o por abonar el aumento de valor que por ellos haya adquirido la cosa. Se trata de una obligación alternativa, cuya elección corresponde al deudor o propietario. La ley marca de este modo la diferencia que en cuanto a sus efectos producen los gastos necesarios y los útiles; aquéllos son abonables siempre; éstos sólo en el caso de que existan, y el vencedor prefiera entregar su importe y no el aumento de valor que por ellos haya recibido la cosa. Este aumento de valor ha de apreciarse en el momento de la entrega, y para graduarlo, necesario es saber lo que valía la

cosa antes de hacerse la mejora; pero teniendo en cuenta solamente el aumento debido a la mejora misma y no a otras accidentales circunstancias.

"Salta a la vista la ventajosa situación del propietario, porque hay mejoras que exigen poco gasto y benefician mucho, y otras muy costosas que dan poco resultado, y el propietario puede elegir siempre el pago de la cantidad menor; pero es lo cierto que si el poseedor hubiese continuado en la posesión, sólo la utilidad resultante hubiera disfrutado, y si ésta es mucha, sólo puede aspirar al reintegro de los gastos efectuados.

"La sentencia del Tribunal Supremo de 9 de abril de 1904 declara que, si bien deben abonarse al poseedor de buena fe los gastos útiles que hubiese hecho en la cosa poseída, es para ello indispensable, no sólo que así se solicite, sino que se demuestre de algún modo la existencia de tales gastos, aunque su cuantía líquida pueda después quedar para la ejecución de la sentencia.

"Según la sentencia del Tribunal Contencioso-administrativo de 17 de marzo de 1897, no haciendo uso el propietario del derecho de opción que le concede el artículo 453, lo más justo es abonar el importe de los gastos útiles o mejoras hechas en la finca."

En 3 Sánchez Román, Derecho Civil, 2da. ed., pág. 448, se indica:

"*c. Gastos constitutivos de las llamadas mejoras necesarias, útiles y voluntarias: poseedor de buena fe.*—Según los artículos 453 y 454, la doctrina en este punto es la misma del Derecho anterior, a saber: los gastos *necesarios* y los *útiles* son de abono al poseedor de buena fe, con derecho de *retención* de la cosa, mientras no sea reintegrado de aquéllos. Respecto de los *útiles*, el vencedor en la posesión, por ser dueño o poseedor con mejor derecho, podrá *optar* entre satisfacer el importe de dichos gastos o abonar el aumento de valor que por ellos haya adquirido la cosa; elección concedida sin duda por precaución para el caso de que sea inferior este aumento de valor que la cosa haya recibido, al importe de los mismos gastos útiles. ..."

En Louisiana, el cuarto párrafo del artículo 508 del Código Civil Revisado dispone específicamente que el dueño del terreno tiene la opción entre reembolsar al constructor de buena fe el valor de los materiales y el costo de la mano de

obra, o restituir una suma igual al valor aumentado del terreno. *Venta* v. *Ferrara*, 196 So. 550, 554.

En esta jurisdicción se ha determinado generalmente que la indemnización que debe pagar el dueño del terreno al constructor de buena fe como condición previa a la entrega del terreno (con la casa), debe ser medida por el importe de los materiales utilizados en la construcción de la casa o edificación, así como el montante de la mano de obra. *Ramos* v. *Pueblo*, 70 D.P.R. 619, 626; *García* v. *Stella*, 69 D.P.R. 977; *Figueroa* v. *Rodríguez*, 68 D.P.R. 266; *Villamil* v. *Camacho*, 64 D.P.R. 821; *Rivera* v. *Santiago*, 56 D.P.R. 381; *Carrasquillo* v. *Ripoll y Maldonado, Int.*, 56 D.P.R. 395. Tal criterio corresponde a la definición de los gastos útiles que han de abonarse al poseedor o constructor de buena fe de ejercitarse la primera modalidad de la opción permitida por el ya citado artículo 382 de nuestro Código Civil. En ninguno de los casos citados se consideró la naturaleza de los factores envueltos si el dueño del terreno optase por pagar el aumento en el valor del terreno ocasionado por la construcción, ya que, en esos casos, la opción no se ejercitó en tal forma.

De todos modos, es claro que al preferir el dueño del terreno pagar los gastos útiles al constructor de buena fe mediante el abono del costo de los materiales y de la mano de obra, ello implica la restitución al constructor de los gastos verificados originalmente por éste al construir la edificación, a los fines de resarcirle justicieramente por los gastos reales hechos por él. La indemnización se determina por la situación de los gastos prevaleciente originalmente al construirse la casa, en contraste con la segunda modalidad de la opción, o sea, el abono del aumento en el valor del terreno, que se determina de acuerdo con la situación prevaleciente al ordenarse judicialmente la entrega.

Al optar el dueño del terreno por abonar el importe original de los materiales y la mano de obra, tal indemnización no debe quedar reducida por la depreciación de la edificación.

En primer término, el artículo 382 define la indemnización en el sentido de incluir solamente los gastos reales, sin que tal articulado permita una reducción de tal cuantía por el hecho de que la casa haya depreciado. La referida disposición estatutaria no autoriza la consideración de ese factor de depreciación en caso de que el demandante opte por resarcir los gastos. La depreciación no constituye un gasto útil que sea real y efectivo, bajo el artículo 382 de nuestro Código Civil. (³) En segundo lugar, la consideración de tal factor a los fines de reducir la compensación correspondiente equivale a establecer la indemnización a base de la situación prevaleciente en el momento de la entrega, y no a base de lo hecho por el constructor al hacerse originalmente la edificación.

Desde el punto de vista de la justicia y de la equidad, sería injusto el privar a un edificante de buena fe de parte de la inversión actual verificada por él por el hecho de que la edificación haya depreciado posteriormente. Él no tendría un resarcimiento adecuado. De otro lado, no se podría alegar que el constructor estaría obteniendo un enriquecimiento injusto a costa del propietario del terreno por verse este último obligado a pagar un valor mayor que el valor depreciado que recibe. Ello sería relevante si la indemnización se definiese por la situación prevaleciente al entregarse la propiedad. Tal posibilidad queda excluída por el propio artículo 328, que se refiere exclusivamente a los gastos originales, esto es, al costo de los materiales y de la mano de obra. (⁴)

---

(³) No tenemos ante nos un caso de fijación de tarifas de una empresa de servicio público ni de expropiaciones ni de contribuciones, en donde el factor de depreciación sería relevante. Tampoco habla el artículo 382 de la recuperación de daños y perjuicios en cuyo caso la depreciación podría ser un factor aplicable. Por ejemplo, bajo el artículo 230 del Código de Enjuiciamiento Civil, en un pleito para recobrar la posesión de propiedad personal, la sentencia podrá conceder la posesión y una indemnización de perjuicios por la retención. Esa indemnización de perjuicios incluye la depreciación de la propiedad personal. *Spencer Kennelly, Ltd.* v. *Bk. of America,* 19 Cal.2d 586. Pero el artículo 382 habla de gastos y no de perjuicios por la retención.

(⁴) Aunque no son directamente aplicables, conviene indicar que el artículo 385 del Código Civil determina que las mejoras provenientes de

Lo que hemos expuesto en cuanto a la depreciación es aplicable al factor que, también erróneamente, utilizó el tribunal en cuanto al supuesto "provecho y utilidad que ha derivado el demandado de la casa." La primera modalidad de la opción concedida en el artículo 382 (gastos útiles del poseedor), no autoriza la consideración de tal factor, como elemento de gastos. Al constructor deben resarcírseles sus gastos, y no se le puede obligar a compensarlos con los beneficios que él ha derivado. Al referirse el artículo 382 a gastos útiles lo hizo con el objeto de distinguirlos de los gastos de puro lujo o recreo determinados en el artículo 383. Manresa, ob. cit., págs. 296, 297, 298; Sánchez Román, ob. cit., págs. 446, 448. El requisito de que sean útiles no elimina la necesidad de que sean gastos reales.

Ya hemos mencionado la segunda alternativa de la opción concedida al dueño del terreno por el artículo 382 (distinta a la opción concedida en el artículo 297, de pagar la indemnización u obligar al edificante a pagar el precio del terreno), o sea, el abonar al edificante el aumento en el valor del terreno ocasionado por la edificación. Esa modalidad envuelve distintos factores como, por ejemplo, el valor del terreno antes de la edificación y su valor posterior como resultado de la construcción. Esa situación exige la consideración de factores prevalecientes en el momento de la entrega. Manresa, ob. cit., pág. 316. Posiblemente en ese caso podrían considerarse los elementos de valoración (y no de gastos, como en

la naturaleza o del tiempo ceden en beneficio del que haya vencido en la posesión, pero el artículo 386 establece que el poseedor de buena fe no responde del deterioro o pérdida de la cosa, a menos que haya actuado con dolo. La "cosa" es el terreno pero surge de esos artículos el establecimiento de una justa reciprocidad entre el propietario y el poseedor, aplicándose el principio *qui sentit commodum et incommodum sentire debet*, o sea, el que tenga beneficios debe tener los perjuicios recíprocos. El propietario tiene la oportunidad de pagar la indemnización menor, o de pagar el costo original cuando éste es menor que el valor actual. También debe asumir las consecuencias de la depreciación. No debe estar en la posición de rechazar el pago del valor actual de la edificación y al mismo tiempo insistir en la situación actual a los únicos fines de computar a su favor la depreciación.

la primera alternativa) que se refieran a la depreciación y al provecho útil de la casa. Sin embargo, debe surgir de los autos que el dueño del terreno, o sea, el demandante, haya ejercitado la opción acogiéndose a esa segunda alternativa— Manresa, ob. cit., pág. 317—y que así lo haya expresado formalmente, a los fines de que la otra parte tenga la oportunidad de prepararse adecuadamente en cuanto a los elementos de prueba envueltos en esa segunda modalidad de la opción. *Venta* v. *Ferrara,* supra; *Foster* v. *Meyers,* 117 La. 216, 41 So. 551; *Hutchinson* v. *Jamison,* 38 La. Ann. 96. Si el demandante no ha ejercitado la opción en esa forma o si no se ha presentado prueba en el tribunal inferior en cuanto al valor aumentado del terreno, presentándose prueba del costo de los materiales y de la mano de obra, la sentencia debe referirse exclusivamente a dicho costo de los materiales y mano de obra. *Hutchinson* v. *Jamison,* supra; Manresa, ob. cit., pág. 317. En los casos ante nos el demandante, en sus demandas, señala, ofrece y consigna ciertas cantidades de dinero que, según él indica, cubren el valor o el precio de la casa. En la vista celebrada en el tribunal inferior no se presentó prueba alguna sobre el valor del terreno. Bajo esas circunstancias, la controversia debe limitarse exclusivamente al costo original de los materiales y la mano de obra y no procede consideración alguna de la depreciación o del "provecho útil" de la casa.

En el caso de *Pueblo* v. *Carrasquillo,* 58 D.P.R. 176, 181, se concedió como indemnización la cuantía de la valoración de una casa, a base del costo de los materiales, más mano de obra, menos depreciación. Aunque la casa se había construido de buena fe en solar ajeno, se trataba en ese caso de una demanda de expropiación forzosa y no de accesión, y, por lo tanto, dicho caso no es aplicable al de autos. Resolvió este Tribunal en el caso de *Carrasquillo* que la acción de desahucio no procedía en cuanto a una casa construida en solar ajeno, en lo referente a la restitución de la casa previo

el pago de la indemnización correspondiente, pero que ello no era obstáculo a la acción de expropiación forzosa. No hubo discusión alguna en cuanto a si en una demanda de accesión bajo los artículos 297 y.382 del Código Civil procede la inclusión de la depreciación como factor relevante.

En sentencia dictada el 4 de marzo de 1892—71 Jur. Civil 297, 305—el Tribunal Supremo de España resolvió lo siguiente:

"Considerando que la indemnización debida al poseedor de buena fe que edificando de nuevo o de cualquier otro modo mejorase la finca ajena, no está determinada por el coste de la obra, sino en tanto en cuanto siendo la misma obra necesaria o útil, se conserve sin menoscabo y exista al tiempo de entrar el verdadero dueño en su posesión, porque de otra suerte podría enriquecerse aquél indebidamente en perjuicio de éste; y por ello resulta infringida esta regla de derecho, así como la ley 38 del Digesto *De reivindicatione*, que se invocan en el tercer motivo del recurso, al condenarse a los recurrentes al abono íntegro de los gastos hechos por La Peninsular, sin deducir del mismo el deterioro que hayan sufrido las casas construídas por dicha Sociedad sobre el terreno reivindicado:"

Empero, esa sentencia fué dictada al amparo de la legislación foral de Cataluña, basada a su vez en el Derecho Romano, y no bajo el régimen del Código Civil Español. Sea ello como fuere, el criterio sentado por esa sentencia implica una consideración de valores en el momento de la entrega, lo cual es contrario al criterio jurídico que debe prevalecer. No estamos de acuerdo con la doctrina enunciada en la citada sentencia.

Incidentalmente, en el caso de *King* v. *Fernández*, 33 D.P.R. 759, 770, este Tribunal indicó lo siguiente:

"Después de todo lo expuesto, la cuestión queda reducida a que el demandante—en la corte de distrito, por supuesto—haga de modo categórico su elección de pagar el precio de la casa, o de exigir al demandado que le pague el justo precio del solar. Nos inclinamos a creer, después de una consideración del asunto, que estábamos equivocados al decir incidentalmente (*obiter*)

en nuestra opinión de noviembre 6, 1924 (pág. 759), que los demandados podían recobrar el valor de la casa en el mercado. Lo que los demandados pueden recobrar está fijado en los artículos 455 y 456 del Código Civil, *siempre que no exceda del valor actual de la casa en el mercado.* ..." (Bastardillas nuestras.)

La útltima frase, expresada como un *dictum*, indicativa de que la indemnización no debe exceder del valor actual de la casa en el mercado, no encuentra justificación en las disposiciones del artículo 382 del Código Civil, y encarna un principio contrario a la doctrina establecida en casos posteriores de este Tribunal, que determinan la indemnización a base del costo de los materiales y de la mano de obra. Solamente podría ser aplicable tal principio ("valor actual de la casa en el mercado"), en conexión con otros factores, de plantearse adecuadamente una controversia en cuanto al valor aumentado de la finca como resultado de la construcción de la casa.

Debe modificarse la sentencia apelada al efecto de que en los tres casos aquí envueltos se conceda la indemnización a los demandados a base del costo original de los materiales y la mano de obra, o sea, que en el caso de la demanda interpuesta contra Ramón Arizmendi (núm. 49–2851 en el tribunal inferior), en la sentencia se debe ordenar el pago por el demandante al demandado de la suma de doscientos cincuenta y un dólares con veinte centavos ($251.20), como condición de la entrega de la casa correspondiente; en el caso contra Ramón Arizmendi y otros (núm. 49–2856 en el tribunal inferior), el pago previo, por sentencia, debe ser de ciento treinta y cuatro dólares con treinta y un centavos ($134.31), y en el caso contra Epifanio Vega (núm. 49–2853 en el tribunal inferior), el pago previo, por sentencia, debe ser de doscientos veintiséis dólares ($226). *Así modificada debe confirmarse la sentencia.*

El Juez Asociado Sr. Sifre no intervino.