Opinión concurrente emitida por la
Jueza Asociada Señora Fiol Matta.
Coincido con la determinación mayoritaria que ordena a los recurridos reembolsar a los peticionarios los gastos en que incurrió su causante en las mejoras que hizo al inmueble propiedad de los recurridos. Me parece, sin embargo, que el Tribunal desaprovecha la oportunidad de determinar los derechos de un optante que posee y mejora el inmueble objeto del contrato de opción de compra frente al tercero que finalmente lo adquiere. Ello requiere examinar *108 la figura del optante que adviene poseedor del bien sometido a opción, así como nuestra jurisprudencia en torno a la naturaleza jurídica del derecho a indemnización dispuesto por los Artículos 297 y 382 de nuestro Código Civil.
I
La controversia que desemboca en el litigio que hoy resolvemos comenzó con un contrato verbal de opción de compra entre el Ledo. José Antonio Casillas Fernández y la Srta. Nayri Collazo Vázquez. Mediante dicho negocio jurídico, el licenciado Casillas Fernández se obligó a venderle a la señorita Collazo un bien inmueble de su propiedad por el precio convenido de $171,000.
Según las determinaciones de hecho del Tribunal de Primera Instancia, la señorita Collazo entregó al licenciado Casillas $30,000, cantidad que sería abonada al precio de compraventa. El licenciado Casillas, en consideración a este pago, entregó la posesión del bien a la señorita Collazo para que le efectuara mejoras con su absoluta aquiescencia. Por tal razón, la señorita Collazo llevó a cabo una “reconstrucción y remodelación”(1) en la cocina, los baños, las puertas y los pisos de la casa; incluso, hizo variaciones estructurales y ampliaciones a la propiedad. Eventualmente, el licenciado Casillas vendió el inmueble a los recurridos por el precio de $177,000, con la anuencia de la señorita Collazo.
La señorita Collazo demandó a los recurridos en cobro de dinero y enriquecimiento injusto. Adujo en su demanda que mediante un acuerdo verbal, y antes de la compraventa del inmueble, los recurridos se comprometieron tanto a restituirle los $30,000 que ella entregó como adelanto del precio al licenciado Casillas, como a resarcirle por las mejoras que ella efectuó en la propiedad. Además, alegó *109 que los $30,000 adelantados por ella están incluidos en el precio pagado por el matrimonio recurrido al licenciado Casillas a cambio del bien inmueble antes descrito. Los recurridos negaron la existencia del pacto verbal y argüyeron que no se subrogaron en los derechos de la señorita Collazo, pues pagaron $177,000 por el inmueble, es decir, $6,000 adicionales al precio convenido en la opción de compra de la señorita Collazo.
Tras varios trámites, que incluyeron un Requerimiento de Admisiones contestado fuera de término, el Tribunal de Primera Instancia dictó una Resolución y/o Sentencia Sumaria Parcial, en la que ordenó a los recurridos rembolsar a los peticionarios la partida de $30,000 que la señorita Collazo le dio al licenciado Casillas Fernández como adelanto del precio de compraventa. En cuanto a las mejoras, el tribunal determinó que aún había controversia sobre su naturaleza y la cuantía correspondiente al resarcimiento, por lo que ordenó la celebración de una vista para dilucidar exclusivamente este asunto.
Celebrada la vista, el recurrido, Roberto Huertas Infante, aceptó haber visto la propiedad durante el proceso de remodelación y antes de comprarla. Por su parte, los peticionarios presentaron una serie de cheques cancelados y facturas que el tribunal utilizó para establecer la cuantía de las mejoras incorporadas como parte de la reconstrucción y remodelación. El Tribunal de Primera Instancia le confirió entera credibilidad a la prueba de los peticionarios, por lo que concedió las partidas reclamadas por dicha parte. La decisión final del foro de primera instancia se basó en el Requerimiento de Admisiones que se dio por admitido, en el acuerdo verbal entre la señorita Collazo y los recurridos, y en los principios generales del enriquecimiento injusto.
Apelada la decisión, el Tribunal de Apelaciones acogió los planteamientos de los recurridos y desestimó la demanda. Particularmente, en cuanto a la partida de *110 $30,000 que la señorita Collazo había dado en adelanto al licenciado Casillas, el Tribunal de Apelaciones señaló como dato importante que los recurridos habían pagado una cantidad mayor al precio sometido a opción por la peticionaria como precio de compraventa. Concluyó el tribunal apelativo que el licenciado Casillas retuvo para sí los $30,000 del adelanto, ya que según la escritura de compraventa y su propio testimonio éste no le acreditó dicha cantidad a los recurridos y éstos no se subrogaron en el lugar de la peticionaria. Además, el tribunal determinó que el Tribunal de Primera Instancia había errado al resolver dicha controversia utilizando el mecanismo de la Regla 33 de Procedimiento Civil, 32 L.P.R.A. Ap. III, en contravención a lo resuelto por este Tribunal en Audiovisual Lang. v. Sist. Est. Natal Hnos., 144 D.P.R. 563 (1997).
En cuanto a la partida concerniente a las mejoras, el Tribunal de Apelaciones decretó que de acuerdo con el Artículo 287 del Código Civil, 31 L.P.R.A. see. 1131, y según el derecho de accesión allí conferido, no procedía dicho pago. El foro apelativo determinó que el licenciado Casillas, como titular de la propiedad al momento en qúe se hicieron las mejoras, tenía derecho a hacerlas suyas. Por eso los recurridos tampoco estaban obligados a pagarle a los peticionarios por las mejoras hechas por la señorita Collazo.
Presentada la solicitud de certiorari ante este Tribunal, ordenamos a los recurridos mostrar causa por la cual no debíamos revocar esta porción del dictamen del foro apelativo. Al igual que determina la mayoría en la Sentencia dictada hoy, entiendo que el foro apelativo erró en su apreciación. A continuación explico los fundamentos jurídicos de mi conclusión.
II
El caso de autos requiere que resolvamos si una optante que hace mejoras al inmueble sometido a opción mientras *111 está en su posesión tiene el derecho a ser resarcida por dichas mejoras frente a un tercero adquirente. Contestar esta interrogante precisa un estudio sobre los conceptos de accesión y posesión y su relación con la figura del optante en nuestro ordenamiento jurídico.
Desde las postrimerías del siglo XIX, Scaevola comentaba que no es labor baladí, sino más bien trabajo espinoso, “especificar, en armonía con cada caso concreto, las consecuencias de la posesión en lo concerniente a la percepción de los frutos, a la indemnización de los gastos necesarios, al resarcimiento de las mejoras útiles, etc.”. Q.M. Scaevola, Código Civil comentado y concordado extensamente, Madrid, Imprenta de Ricardo Rojas, 1893, T. VIII, págs. 43-44. El ilustre comentarista encontró en esta figura “caracteres ambiguos”, “anfibología jurídica”, “nebulosidad en las doctrinas” y hasta “cierta promiscuidad entre la posesión y otras instituciones por lo que atañe a sus elementos integrales”. íd. Por su parte, José María Manresa y Navarro dijo, en sus comentarios, que “la posesión constituye uno de esos pasos difíciles en los que el viajero agota sus fuerzas físicas, como el legislador y el jurisconsulto sus fuerzas intelectuales, sin estar por eso seguro de escapar con bien en su difícil empresa”. J.M. Manresa y Navarro, Comentarios al Código Civil Español, 7ma ed., Madrid, Ed. Reus, 1972, T. IV, págs. 5-6. En un tono más optimista, y con relación al tema que abordamos, José Angel Torres Lana califica “[l]a entrada del optante en posesión del objeto del contrato” como “uno de estos supuestos que denotan la viveza actual del fenómeno posesorio”. J.A. Torres Lana, Contrato y Derecho de Opción, 2da ed., Madrid, Ed. Trivium, 1987, pág. 22. A estos menesteres debemos dedicar nuestra atención hoy.
Como afirma Concepción Rodríguez Marín, “[l]os supuestos de accesión por incorporación en suelo ajeno son, por hipótesis, actos posesorios que sacan a la luz toda la problemática que envuelve a una institución como es la *112 posesión”. C. Rodríguez Marín, Liquidación de gastos con ocasión de la tenencia de una cosa, Barcelona, Ed. Bosch, 1994, pág. 56. Al igual que el Código Civil español, nuestro Código considera la accesión como una “facultad derivada del dominio”, basada en la máxima de que lo accesorio sigue a lo principal (accessorium sequitur principóle). (Enfasis suprimido.) Véase J. Santos Briz, Tratado de Derecho Civil, Barcelona, Ed. Bosch, 2003, T. II, pág. 145. Con ello se apartó tanto del derecho romano como de las Siete Partidas y del derecho francés, donde la accesión es considerada como una de las maneras de adquirir la propiedad.(2) C. Valverde y Valverde, Tratado de Derecho Civil Español, 4ta ed., Valladolid, Talleres Tipográficos Cuesta, 1936, T. II, pág. 93.
Debido al derecho de accesión y el principio de que la superficie cede al suelo (superficies solo cedit), el titular de un bien inmueble (dominus soli) puede hacer suyas las mejoras, los frutos y las edificaciones efectuadas en él. El Artículo 287 del Código Civil, 31 L.P.R.A. sec. 1131, establece que la propiedad de los bienes, ya sean muebles o inmuebles, lleva consigo el derecho, por accesión, a todo lo que ellos producen o se les une o incorpora, natural o artificialmente. De acuerdo con el régimen de la llamada accesión industrial inmobiliaria, el Artículo 294 prescribe que lo edificado, plantado o sembrado en predios ajenos y *113 las mejoras o reparaciones hechas en ellos, pertenecen a su dueño. 31 L.P.R.A. sec. 1161.
Refiriéndose al artículo homólogo español, Mariano Alonso Pérez resalta que el legislador se apartó de los precedentes históricos de la accesión industrial inmobiliaria al regular el concepto de la edificación junto al de la plantación y la siembra.(3) M. Albaladejo, Comentarios al Código Civil y compilaciones forales, 2da ed., Madrid, Ed. Rev. Der. Privado, 1990, T. V, Vol. I, págs. 323-327. Declara Mariano Alonso Pérez que por la accesión
... se unen a la propiedad del suelo ajeno todas las reparaciones y mejoras, según el viejo principio de la accesión afectante a omnis materia, ex qua aedificium constat. (Enfasis suplido.) Albaladejo, op. cit., pág. 323.
El citado autor concluye que el articulado sobre accesión industrial inmobiliaria opera en las reparaciones y renovaciones de los bienes inmuebles ajenos. Para Alonso Pérez,
... la exclusión de la accesión en el supuesto de alteraciones o construcciones sobre obras o edificios preexistentes no encuentra apoyo en los preceptos del Código Civil ... es indiferente que se trate de una obra nueva en su totalidad o que sea reedificación o una mera reparación de otra existente o una ampliación de la misma. En cualquier caso, no tiene mucho sentido excluir las reparaciones y obras parciales, cuando el artículo 358 del Código civil se pronuncia con una extensión manifiesta, añadiendo a “lo edificado, plantado o sembrado ... las mejoras o reparaciones ... De este modo, el Código civil acoge un concepto de accesión expresamente lato, desde el punto de vista cuantitativo.(4) (Énfasis suplido y en el original, y escolio omitido.) Albaladejo, op. cit., pág. 326.
*114 En su comentario al Artículo 358 español (Artículo 294 nuestro), Scaevola explica este concepto lato de la manera siguiente:
Las mejoras o reparaciones hechas en los predios se equiparan a las tres formas mencionadas de accesión, edificación, plantación y siembra, porque en ellas se significa con evidencia el carácter de accesorios de la tierra en que se llevan a cabo. Aunque no aparecen citadas en los demás artículos y sólo se las incluye en el principio general del artículo 358, creemos que en cuanto a las modalidades que con motivo de su incorporación al suelo pueden presentar, están sujetas al mismo régimen legal que las segundas. (Enfasis suplido.) Scaevola, op. cit., 5ta ed., 1949, T. VI, pág. 557.
De acuerdo con nuestro Artículo 295, todas las obras, siembras y plantaciones se presumen hechas por el propietario y a su costa mientras no se pruebe lo contrario. 31 L.P.R.A. see. 1162. Cuando Scaevola comenta el Artículo 359 del Código Civil español (Artículo 295 nuestro) afirma:
Si bien no cita el artículo 359 las mejoras o reparaciones hechas en los predios, inútil parece decir que deben incluirse en el espíritu general que a aquél informa, como ya tenemos advertido al estudiar el artículo 358, porque además igualmente debe presumirse que son del dueño del suelo en que se han practicado, presunción cuya razón de ser es la misma que la que aplicamos a las obras, siembras y plantaciones. (Énfasis suplido.) Scaevola, op. cit., 5ta ed., 1949, T. VI, pág. 558.
Ángel Carrasco Perera cita la jurisprudencia del Tribunal Supremo de España para probar “que la aplicación de las normas reguladoras de la construcción en suelo ajeno nunca ha dependido de que estuviésemos en presencia de un determinado tipo de labor de fábrica”. (Énfasis suplido.) A. Carrasco Perera, “Ius aedificandi” y Accesión, Madrid, Ed. Montercorvo, 1986, Cap. IV(III. 2), pág. 141. El autor cita la Sentencia del Tribunal Supremo de España de 27 de marzo de 1958, que establece que las obras de reparación que se realizan a expensas propias en la casa del padre de la novia pueden repetirse, una vez frustrados los proyectos *115 de matrimonio. Carrasco Perera también recurre a la Sentencia del mismo foro (de 27 de noviembre del 1978) en la cual, según el autor, se establece que es objeto de accesión la instalación de parquet en suelo ajeno.(5)
Explicada la doctrina, examinemos si nuestra jurisprudencia circunscribe la aplicación de la normativa sobre accesión y construcción en suelo ajeno a algún tipo determinado de mejora. Ha quedado establecido en nuestra jurisprudencia que la accesión
... no se limita a edificaciones de carácter sustancial y permanente tales como edificios, viviendas, rellenos, muros de contención y canales de riego, sino que se da con respecto de otras obras y mejoras, como las de alumbrado, ascensores y servicio de agua, hornos, depósitos y cobertizo; lavaderos, fuentes y abrevaderos. Scaevola, Código Civil, 5ta. ed., tomo VI, págs. 582-583; Manresa, Comentarios al Código Civil Español, 7ma. ed., tomo III, pág. 260; Puig Peña, Tratado de Derecho Civil Español, tomo III, vol. 1, pág. 129, escolio 24; Sentencia del Tribunal Supremo de España de 18 de diciembre de 1956. Sucn. Echegaray v. Esso Standard Oil Co., 87 D.P.R. 825, 831 (1962).
Es decir, en nuestro ordenamiento, todo tipo de mejora es objeto de accesión.
En nuestra jurisdicción, para que se produzca la accesión no es necesario que el objeto situado en el inmueble haya adquirido el carácter de inmueble, adhiriéndose a la propiedad de manera que no pueda separarse de ella sin quebrantamiento o deterioro. Por lo tanto, aún las mejoras útiles que pueden ser retiradas sin menoscabo del inmueble pueden ser objeto de la accesión a elección del dueño del inmueble. Sucn. Echegaray v. Esso Standard Oil Co., supra; R.E. Bernier, El derecho de accesión en Puerto Rico, Barcelona, 1970, pág. 62.
*116 Respecto al concepto de edificación, Alonso Pérez se refiere a la definición de Sanz Fernández,(6) quien dijo que una edificación es “toda unión material de bienes muebles a un inmueble por la acción [del] hombre mediante cualquier clase de obra o construcción”. Ya en Freyre v. Blasini, 68 D.P.R. 211 (1948), habíamos considerado como edificación hecha de buena fe un horno nuevo construido por unos arrendatarios que contaban con el consentimiento de süs dueños.
A pesar de su amplitud, el derecho de accesión de las obras en suelo ajeno no es absoluto; se reconoce con sujeción a ciertos derechos concedidos a quienes obran de buena fe. Por ello, desde 1913, nuestra jurisprudencia estableció el principio de que el dueño de la tierra, por ese solo hecho, no es el único y legítimo dueño de una edificación construida de buena fe en el terreno de su propiedad. Berrocal v. Tribunal de Distrito, 76 D.P.R. 38, 52-53 (1954), citando a El Pueblo v. Municipio de San Juan, 19 D.P.R. 656, 668 (1913). Véase Op. Sec. Just. Núm. 9-1957.
Los artículos relacionados a la accesión como facultad del dominio establecen el sistema general que regula las obras efectuadas en suelo ajeno. Según estos preceptos, no es requisito que la persona que realiza la obra objeto de la accesión y que tiene derecho a ser indemnizada sea un poseedor, siempre que tenga buena fe. El Código Civil sólo considera la buena o mala fe al momento de edificar para determinar la indemnización correspondiente. Sucn. Echegaray v. Esso Standard Oil Co., 87 D.P.R. 825 (1963). Véanse, además: Manresa, op. cit., 5ta ed., 1920, T. III, págs. 208-211; Scaevola, op. cit., 5ta ed., 1949, T. VI, págs. 580-581.
Nuestra tradición civilista reconoce una bifurcación entre el dominio y la propiedad de un bien, y la posibilidad de *117 la posesión. Por eso, al abordar el tema de las obras construidas de buena fe en propiedad ajena, el Código Civil plasmó un régimen de mejoras aplicable al caso particular de la posesión. En el caso que un edificante de buena fe sea también poseedor de buena fe, al momento de indemnizarle le aplican las disposiciones especiales sobre la indemnización del capítulo sobre posesión. Lo mismo es cierto de quien realiza mejoras de buena fe, según hemos explicado; ello es importante porque la accesión condiciona los derechos de los edificantes sólo a su buena o mala fe, mientras que en la posesión se establece un régimen particularizado de indemnización cuyas disposiciones varían de acuerdo con la naturaleza de las obras, aunque se toma en consideración la buena o mala fe.
El Artículo 360 nos da las definiciones de las dos acepciones del término “posesión civil” reconocidas en el derecho civil. Según dicho artículo, posesión natural es la tenencia de una cosa o el disfrute de un derecho que tiene una persona, mientras que posesión civil es esa misma tenencia o disfrute, unidos a la intención de haber la cosa o derecho como suyos. 31 L.P.R.A. see. 1421.
Como explica Francisco Bonet Ramón, toda tenencia —corpus— es una posesión natural, pero cuando le acompaña la intención —animus— la posesión es civil. Esa intención es para el comentarista un elemento integral de la posesión civil (possesio civilis), y sugiere que “debemos traducirle, con sujeción a las ideas desarrolladas por nuestro Código, como animus domini, lo que significa tanto como poseer la cosa en concepto de dueño o el derecho en concepto de titular del mismo”. F. Bonet Ramón, Código Civil Comentado, Madrid, Ed. Aguilar, 1962, pág. 386. La posesión considerada como derecho, es decir, la posesión civil,(7) tiene a su favor determinadas defensas que le presta el Ordenamiento y que hacen que, concebida en tal forma, a *118 la posesión se le considere un derecho real provisional. J.R. Vélez Torres, Curso de Derecho Civil, 4ta ed., Madrid, Ed. Offirgraf, 2002, T. II, pág. 117.
Federico Puig Peña menciona las consecuencias jurídicas del derecho de la posesión y expresa que los autores discuten sobre si se trata de un derecho real o personal, a lo que acepta el autor que
... va ganando terreno la doctrina que abiertamente admite la existencia de un derecho real (dada la inmediatividad de la relación [de las personas] con la cosa); siquiera, como afirma Castán, estemos ante un derecho real de naturaleza especial, dada la protección meramente provisional que se le dispensa. F. Puig Peña, Tratado de Derecho Civil español, Madrid, Ed. Rev. Der. Privado, 1972, T. Ill, Vol. I, pág. 31.
Según el Artículo 293 de nuestro Código Civil, 31 L.P.R.A. see. 1146, es poseedor de buena fe el que posee como propietario por un título suficiente en sus términos y condiciones para transferir la propiedad y cuyos defectos son ignorados por el poseedor. La posesión de buena fe cesa desde el momento en que el poseedor conoce por sí mismo los defectos del título, o mediante el juicio que establezca el propietario de la cosa para reivindicarla. No hay posesión de buena fe cuando la misma no se ampara en un título o acto jurídico que aparente una legítima adquisición, o cuando el poseedor no ignora los vicios que invalidan o hacen ineficaz esa adquisición. Cedó v. Laboy, 79 D.P.R. 788 (1956).
En cuanto a la relación entre posesión y dominio, nuestro Artículo 392 expresa que los actos relativos a la posesión, ejecutados o consentidos por el que posee una cosa ajena como mero tenedor para disfrutarla o retenerla en cualquier concepto, no obligan ni perjudican al dueño de la cosa, a no ser que éste hubiese otorgado a aquél facultades expresas para ejecutarlos o los ratifica posteriormente. 31 L.P.R.A. see. 1478.
En tales casos aplica el Artículo 297 de nuestro Código Civil cuando establece que el dueño del terreno en que se *119 edifique de buena fe tendrá derecho a hacer suya la obra mediante el pago al edificante del costo de los materiales y la mano de obra, o el costo de reproducción de la misma al momento en que el dueño del terreno ejercite su derecho, deduciendo la depreciación, lo que resulte mayor, u obligar al que fabricó a pagar el precio del terreno. 31 L.P.R.A. sec. 1164. Es imperativo mencionar que nuestra jurisprudencia le ha conferido a dicha opción del propietario un carácter real, pues como requisito para la accesión, es también una facultad derivada del dominio, es decir, una potestad de la condición de dominus soli. Berrocal v. Tribl. de Distrito, supra, pág. 57.
Ignacio Sierra Gil de la Cuesta esboza las dos teorías preeminentes respecto a la naturaleza y el alcance del citado Artículo 297. Por un lado, presenta la tesis del dominio separado del incorporante, previo a que el propietario ejercite la opción que le confiere el artículo al dominus soli. Por otro lado, el autor expone la tesis de la accesión automática “en el sentido de que lo edificado, plantado o sembrado en suelo ajeno pertenece al propietario de éste desde el instante mismo en que tiene lugar la unión o incorporación”. I. Sierra Gil de la Cuesta, Comentario del Código Civil, Ira ed., Barcelona, Ed. Bosch, 2000, T. III, págs. 156-157. Según Sierra Gil de la Cuesta, la jurisprudencia española se inclina por la primera teoría y le llama “accesión en expectativa y no consumada”. Ver Sentencias del Tribunal Supremo de España de 23 de marzo de 1943, de 13 de marzo de 1948, de 17 de diciembre de 1957, de 17 de junio de 1971 y de 20 de mayo de 1977. La jurisprudencia patria se ha influenciado por la misma inclinación doctrinaria como veremos más adelante.
En nuestro sistema civilista, el principio de superficies solo cedit, derivado del principio de accessorium sequitur principóle, se manifiesta de manera particular en este Artículo 297. La letra del precepto demuestra que, en el caso especial en que haya un poseedor y edificante de buena fe, *120 el principio de superficies “solo cedit” no establece una accesión automática de las mejoras, pues el dueño del suelo puede adquirir lo edificado en su propiedad por un poseedor y edificante de buena fe “previo el pago al dueño de la obra” de la indemnización correspondiente. (Énfasis suplido.) Artículo 297 del Código Civil, 31 L.P.R.A. sec. 1164.
Las mejoras no acceden al terreno automáticamente, sino que pertenecen al poseedor y edificante de buena fe hasta tanto el propietario del terreno le indemnice. Como dijéramos en Berrocal v. Tribl. de Distrito, supra, pág. 62, mientras no pague los materiales y la mano de obra, el dueño del suelo no adquiere el dominio de lo edificado. Al así decidir usamos como fundamento la Sentencia del Tribunal Supremo de España de 2 de enero de 1928. Esta Sentencia española, según comentada por Puig Brutau, declaró, al igual que las Sentencias de 27 de noviembre de 1902 y de 21 de mayo de 1928, que mientras no tenga efecto la indemnización a que se refiere nuestro Artículo 297, el dueño del predio no adquiere el dominio de lo edificado, sembrado o plantado. J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, T. III, Vol. 1, págs. 404-405. Comenta y se remite también a la Sentencia de 18 de marzo de 1848 que estableció, con respecto a los equivalentes españoles de nuestros Artículos 297 y 382, que “no sólo en su sentido literal, sino atendiendo al espíritu que lo informa”, se llega a la conclusión de que “mientras el pago de la indemnización no tenga efecto, no ostenta el dueño del predio el dominio de lo edificado”. Puig Brutau, op. cit.
Para ilustrar la discusión del tema en épocas más recientes, Sierra Gil de la Cuesta se refiere a la Sentencia de 31 de diciembre de 1987 donde se reitera el principio contrario a la accesión automática. El autor explica que
... mientras la indemnización no tenga efecto, no ostenta el dueño del predio el dominio de lo edificado, y por el contrario, *121 el que edificó de buena fe tiene el derecho de retención establecido en el art. 453 [artículo 382 nuestro] ... puesto que ... la figura de la accesión no provoca en caso de buena fe declarada sin más y por la sola constancia de lo edificado de un desplazamiento patrimonial sino mediante la opción determinada en el art. 361 [Artículo 297 nuestro]. Sierra Gil de la Cuesta, op. cit., pág. 159.
En Berrocal v. Tribl. de Distrito, supra, págs. 54-57, comentamos respecto al Artículo 297 que
"... el dueño del terreno puede hacer suya la obra, plantación o siembra: luego no es suya inmediatamente, no es suya todavía. ¿De quién es entonces? ¿De quién la puede reclamar el dueño? Sin duda del tercero, porque del tercero es; y para que este tercero deje de ser dueño, hay que indemnizarle en una forma o en otra, según haya obrado de buena o mala fe. ...”
En este punto concreto, y por lo que al Código Civil español respecta, creemos más en lo firme la interpretación del señor Navarro Amandi, quien dice que “hay que afirmar la propiedad del que edificó o plantó, lo mismo que la propiedad del dueño del suelo. Pero que como se trata de dos derechos de propiedad en conflicto, la ley resuelve en favor de uno de los propietarios, bien según la regla de que lo accesorio sigue a lo principal, o en atención a la buena o mala fe ...”.
... Es indudable, y responde a toda la estructura lógica del Código, que el edificante de buena fe es el que posee el título de dominio de la edificación hasta tanto el dueño del suelo haga uso del derecho optativo que le concede el artículo 297 de nuestro Código, y le pague al propietario de la edificación, los materiales y la mano de obra empleados en dicha edificación o lo obligue a comprarle el suelo. Mientras esa indemnización no se pague no pasa al dueño del suelo el título de dominio del inmueble construido, y por el contrario, el edificante de buena fe posee no sólo el título de dominio sobre la edificación, sino también, el derecho potencial de convertirse en dueño del suelo. (Enfasis suprimido.)
Así quedó establecido en nuestra jurisprudencia el derecho propietario que tiene el edificante de buena fe sobre las mejoras que efectúe en propiedad ajena. Los gastos que deberá abonar el propietario del suelo para adquirir las mejoras del edificante de buena fe cuando es poseedor de *122 buena fe quedan preceptuados en el Artículo 382 del Código Civil, 31 L.P.R.A. see. 1468, que se refiere particularmente a los gastos necesarios y útiles. A esos efectos dis-pone el Código que mientras los gastos necesarios se abonan a todo poseedor, los útiles sólo se abonan al poseedor de buena fe, pudiendo optar el que le hubiese vencido en la posesión por satisfacer el importe de los gastos o por abonar el aumento de valor que por ellos haya adquirido la cosa.
Scaevola define los gastos útiles como “los que poniendo la cosa en condiciones de procurar más provecho, más comodidad, más frutos o más interés, aumentan su valor”. Scaevola, op. cit, pág. 415. El autor explica que
... a[u]n cuando estos gastos [útiles] no afectan a la substancia de la cosa, revelan luí propósito digno de elogio, cual es el de aumentar su valor o su producto, de ahí que se conceda al que de buena fe los hizo, el derecho de reclamar su importe. Pero ya no se trata de un gasto impuesto por la necesidad; la voluntad del poseedor es un factor decisivo .... Scaevola, op. cit., 1893, T. VIII, pág. 424.
Habla el tratadista de una “consideración cariñosa” que guarda el Código Civil hacia el poseedor de buena fe como la motivación para conceder el remedio de la indemnización por gastos no necesarios, como son las mejoras útiles. Si en el citado Artículo 297 se establece un derecho del propietario a adquirir las mejoras mediante el pago de los gastos en que incurre un poseedor de buena fe, en el Artículo 382 se presenta el pago de gastos por mejoras desde la perspectiva de los principios básicos de buena fe y del enriquecimiento injusto, pues las mejoras son propiedad del poseedor y edificante hasta tanto se le indemnice.
Comenta Angel Carrasco Perera que entre los Artículos 297 y 383 existen unas relaciones evidentes. El autor opina que no hay diversidad de espacios normativos entre el régimen de accesión por construcción en suelo ajeno y la doctrina general de la indemnización por mejoras, o impensas, como también le llama la doctrina. Dice el autor que:
*123 ... [y]a de momento, la remisión efectuada por el artículo 361 al régimen de las impensas posesorias deja claro que la posición de quien construye en suelo ajeno de buena fe es idéntica a la de quien posee indebidamente la finca ajena y en ella realiza mejoras de buena fe. Mientras las normas de accesión se formulan aparentemente desde el lado del dominus soli, como una supuesta técnica adquisitiva, el régimen de las impensas posesorias elige la faceta pasiva, la situación del poseedor mejorante y su correspondiente derecho de compensación. (Enfasis suplido.) Carrasco Perera, op. cit., pág. 127.
Como dijéramos en E.L.A. v. Tribunal Superior, 94 D.P.R. 157 (1967), dado el principio de la buena fe, dichos artículos tienen su solución de justicia en la indemnización. Puig Brutau, op. cit., pág. 115, así lo entiende al afirmar que “estos preceptos tratan de evitar que el sucesor en la posesión (ordinariamente el propietario de la cosa) experimente un enriquecimiento injusto a costa del poseedor”.(8) Este tribunal, en Marchand v. Montes, 78 D.P.R. 131 (1955), adoptó el pensamiento que José Castán Tobeñas expresó sobre que “[l]os gastos y mejoras revisten especial relevancia e interés para el Derecho cuando son hechos sobre cosa ajena, pues producen en tal caso, a virtud de los principios del enriquecimiento, determinados derechos de reembolso y de garantía a favor del mejorante”. J. Castán Tobeñas, Derecho civil español, común y foral, 7ma ed., Madrid, Ed. Reus, 1949, T. I, pág. 622.
Ha quedado establecido en nuestra jurisdicción que quien construye en terreno ajeno de buena fe, por el permiso que le concedió un anterior dueño, tiene derecho a que se le pague el importe de los materiales invertidos en la construcción así como el montante de la mano de obra. Ramos v. Pueblo, 70 D.P.R. 619 (1949). Véanse, además: Sucrs. Ramos Muñoz v. Apollo Hardware, 110 D.P.R. 855, *124 859 (1981); Castro Anguita v. Figueroa, 103 D.P.R. 847, 851 (1975); C.R.U.V. v. Román, 100 D.P.R. 318, 322-323 (1971); E.L.A. v. Tribunal Superior, supra, págs. 162-163; Cesaní Vargas v. Tribunal Superior, 92 D.P.R. 239, 244—245 (1965); Toro v. Mojica, 79 D.P.R. 630, 633 (1956); Berrocal v. Tribl. de Distrito, supra, págs. 38 y 60-61; Viera v. Arizmendi, 74 D.P.R. 38, 48 (1952); Echegaray v. Tribl. de Distrito, 72 D.P.R. 445, 447-448 (1951).
En Quiñones v. Alcaide, 72 D.P.R. 718 (1951), resolvimos que el derecho que tiene el dueño del terreno de hacer suyo lo construido de buena fe, previo el pago correspondiente, es un derecho que pasa al colindante retrayente cuando se subroga en los derechos del dueño. Incluso, he-mos establecido que el dueño del terreno deberá pagar el importe de los gastos necesarios y útiles al poseedor de la obra, aun cuando éste no fuera quien la hubiera construido originalmente. King v. Fernández, 33 D.P.R. 759 (1924).
III
El derecho del poseedor y edificante de buena fe a recibir la indemnización por los gastos incurridos en mejoras y el derecho optativo del propietario (dominas soli) a adquirir por derecho de accesión todo lo que esté en la superficie de su suelo convergen en los Artículos 297 y 382 de nuestro Código Civil, supra. Dada la naturaleza dual de la indemnización de gastos por mejoras, que por un lado se presenta como facultad del domino en el Artículo 297 y por el otro como remedio en equidad en el Artículo 383, es difícil conferirle carácter personal o de crédito.
Hace más de medio siglo que rechazamos clasificar el derecho de indemnización del que edifica en suelo ajeno con el consentimiento del dueño como un bien mueble y resolvimos que dicho derecho es un bien inmueble, es decir, que se trata de un derecho real. Berrocal v. Tribl. de Distrito, supra. Reiteramos hoy dicha postura, a la vez que *125 aprovechamos la coyuntura del presente caso para profundizar acerca de la naturaleza real del derecho de indemnización del poseedor y edificante de buena fe.
En Berrocal v. Tribl. de Distrito, supra, pág. 46, luego de afirmar que “ [1] a ley es siempre la premisa mayor de toda conclusión jurídica”, hicimos referencia al Artículo 262 de nuestro Código Civil, según el cual “[1] as cosas inmuebles pueden serlo, unas por su propia naturaleza y otras por el destino u objeto al cual son aplicables”. 31 L.P.R.A. see. 1042. Nuestra conclusión también se fundamentó en el segundo inciso del Artículo 264, pues según su letra, “cualquier derecho u obligación constituido sobre una propiedad inmueble” forma parte de las cosas incorporales que son inmuebles por razón del objeto al cual se aplican. 31 L.P.R.A. see. 1044.
El Código Civil español no contiene un articulado análogo a nuestros Artículos 262 y 264. Éstos provienen del Código Civil de Louisiana, para ser específicos, de sus Artículos 463 y 471, respectivamente. En los Artículos 262 y 264, de forma cónsona con el principio de numerus apertus que permea nuestro derecho real e hipotecario,(9) nuestro Código Civil incorpora la clasificación francesa,(10) que a su vez acepta la regla de que hay cosas incorpóreas que son inmuebles porque aplican a cosas inmuebles.(11)
Frangois Laurent, en su trabajo sobre los principios de derecho civil francés, se remite al pensamiento de Pothier, quien dijo que los derechos reales inmobiliarios no son más que la heredad misma o un desmembramiento de dicha heredad. Los créditos, al contrario, derivan su naturaleza de muebles o de inmuebles de la cosa que constituye su *126 objeto. F. Laurent, Principios de Derecho Civil Francés México, Barroso Hnos. y Comp. Sucesores, 1895, T. V, pág. 715. Laurent se refiere al viejo adagio actio quae tendit ad inmóbile est inmobilis, y explica que “[e]n definitiva actio ad inmóbile significa la acción que tiende a adquirir la propiedad de un inmueble”. íd. La acción es inmobiliaria cuando el actor tiende a adquirir la propiedad de un inmueble.
Ambrosio Colin y Henri Capitant describen lo que son, de acuerdo con la doctrina francesa, los “[i]amuebles por el objeto a que se aplican”. A. Colin y H. Capitant, Curso Elemental de Derecho Civil, 4ta ed., Madrid, Ed. Reus, 1961, T. II, Vol. II, págs. 32-34. Según los autores, “[e]sta clase comprende ... los derechos inmuebles que no son la propiedad, pues ésta se confunde, se absorbe en el objeto mismo”, íd., pág. 32. Esta categoría de inmuebles se compone, a su vez, de dos subdivisiones. La primera la constituyen “[l]os derechos reales distintos de la propiedad que pesan sobre un inmueble”. íd. Dentro de estos derechos reales distintos de la propiedad se encuentran los derechos reales principales {Le. usufructo, uso, habitación, servidumbre, enfiteusis, superficie) y los derechos reales accesorios {Le. hipoteca, anticresis).
La segunda subdivisión de los inmuebles por el objeto a que se aplican, según la doctrina francesa, la componen los “créditos inmuebles”. Colin y Capitant, op. cit. Los autores aclaran esta aparente contradicción conceptual explicando que si bien un derecho de crédito siempre tiene por objeto hacer, no hacer o dar una cosa, y se considera por ello casi siempre de naturaleza mueble, cuando la obligación tiene por objeto no el acto de hacer o dejar de hacer, sino transferir la propiedad de una cosa, y esa cosa es inmueble, el derecho del acreedor también es inmueble.(12)
*127 Por su parte, el Código Civil español establece, en su Artículo 334 —análogo al Artículo 263 nuestro— un listado de “maneras posibles de ser la propiedad inmueble”, indicándonos, como dice Scaevola, “el criterio o regla de conformidad con los cuales haya de procederse en la clasificación de todos los demás objetos que no estén taxativamente enumerados en el artículo”. Scaevola, op. cit., T. VI, 1949, págs. 214 y 255. El inciso décimo del Artículo 263 es el único que se dedica a las cosas incorpóreas que son “inmuebles por analogía”, como le llaman los españoles. Distinto a los incisos que le preceden, éste es el más genérico, por lo que demuestra una intención parecida a la del Code francés y el Código de Louisiana.
Laurent, atendiendo la situación en que un propietario adquiera un terreno ya mejorado por un poseedor de buena fe a quien el antiguo propietario no ha indemnizado, se hace varias preguntas, que luego responde: “¿Con qué título promovería el constructor contra el antiguo propietario? ¿En virtud de un vínculo de obligación? Jamás lo ha habido. Y no puede perseguirlo como propietario porque ya dejó de serlo.” Laurent, op. cit, T. VI, págs. 417-418.
Carrasco Perera explica que un tema muy discutido en la doctrina ha sido el de saber si el derecho de compensación del constructor de buena fe es de naturaleza personal y, por lo tanto, sólo exigible ante el propietario del terreno al tiempo de la incorporación, o si se trata de un derecho real o ambulatorio propter rem contra los sucesivos adquirentes de la finca edificada. Carrasco Perera, op. cit., págs. 338-339.
El autor opina que no se puede decir que el constructor de buena fe ostente propiamente un crédito para el reembolso de los gastos realizados. Tampoco se puede hablar, “en sede del art. 361 de una obligación alternativa del do-minus soli .... Son muy distintas las dos situaciones recogidas en [este artículo] para hablar de ellas en términos de alternatividad”. (Enfasis suprimido.) Carrasco Perera, op. *128 cit, pág. 338. Carrasco discute que sólo el propietario actual del terreno edificado está en condiciones de ejercer la opción concedida en el citado artículo, y expresa que “[s]i esto es así por lo que atañe al carácter de la opción, igualmente ocurre con la naturaleza no automática de la adquisición”. íd. Continúa explicando el autor:
El propietario del suelo no adquiere nada por el hecho de la incorporación, de la misma forma que no debe nada; todo se reduce a saber a quien corresponden las mejoras en el momento de la liquidación posesoria. Obligado a pagar está quien ejercite el derecho del artículo 361, y es claro que éste no puede ser sino el propietario actual. (Enfasis suprimido.) Id., págs. 338-339.
Carrasco Perera concluye que antes del propietario del terreno ejercer su opción y derecho de accesión de las mejoras mediante la indemnización,
... no existe deuda, sino carga:(13) ha de pagar antes de adquirir y precisamente para adquirir. No hay circulación de la obligación, sino un conjunto de acciones que corresponden a quien es propietario actual del terreno. El constructor que se dirige al propietario actual no le exige el crédito que nació en cabeza del antiguo dueño, entre otras cosas porque el constructor solo puede dirigirse contra el dueño “para que éste opte”, no para que pague, y sólo el dueño actual está en condiciones de optar, y esto es así porque, como ha afirmado la Jurisprudencia en otro contexto, “no existe derecho de accesión sin dominio previo en aquel que pretenda ejercitarlo”. Todo ello, claro está, con independencia de otros derechos que pudieran surgir entre las partes (saneamiento, responsabilidad, fe pública registral). (Enfasis en el original suprimido, énfasis suplido y escolio omitido.) Carrasco Perera, op. cit., pág. 339.
Manresa indica que aunque el tercero puede dirigirse contra el dueño actual del terreno, la indemnización debe recaer sobre quien se ha aprovechado de la accesión. Manresa, op. cit, 5ta ed., T. III, pág. 212.
*129 En Berrocal v. Tribl. de Distrito, supra, pág. 61, señalamos que
... tanto los comentaristas del derecho civil francés, como la jurisprudencia de los tribunales franceses, afirman, que el derecho a indemnización a que tiene derecho un edificante de buena fe ... es un derecho inmueble, que puede ser vendido, hipotecado, que afecta al derecho de superficie, y puede ser inscrito en el Registro de la Propiedad como un derecho de dominio independiente al derecho de dominio del dueño del suelo.
No hay diferencia sustancial a este aspecto con lo que establece la legislación y la glosa española sobre el particular[.] ... No existe tampoco diferencia sustancial con lo que establece la legislación y la glosa puertorriqueña correspondiente a la misma institución de derecho.
Por todo lo anterior, en aquella ocasión, resolvimos que
... el derecho de recibir compensación por los materiales y mano de obra que corresponde a todo edificante de buena fe, establecido sobre un edificio, es un derecho inmobiliario por estar constituido sobre urna propiedad inmueble. Berrocal v. Tribl. de Distrito, supra, pág. 46.
Dicha opinión concluye con un vaticinio de la controversia que hoy nos ocupa:
Consagrar en nuestra jurisprudencia el principio que el derecho de indemnización de un edificante de buena fe sobre un suelo ajen [o e]s un bien mueble ... sería un error grave. Bastaría entonces que el dueño del suelo ajeno vendiera, cediera o traspasara a otra persona el suelo sobre el cual se ha construido de buena fe, para que la alegada obligación personal ... dejara al edificante de buena fe indefenso ante el nuevo adquirente. Berrocal v. Tribl. de Distrito, supra, pág. 64.
Bernier nos explica que en el caso de que el inmueble donde el edificante ha efectuado obras se venda antes de que se verifique el pago de la indemnización, éste puede reclamar
... del comprador que será quien aprovechará las obras. El comprador, sin embargo, puede repetir del vendedor cuando *130 no se ha pactado nada diferente o de las circunstancias del negocio resulte una solución distinta. Este derecho es consecuencia de la obligación de saneamiento que tiene el vendedor de acuerdo con los artículos 1363 y siguientes del Código [C]ivil[, 31 L.P.R.A. see. 3831 y siguientes]. Bernier, op. cit, pág. 94.
Como todo derecho real, el derecho del edificante tiene acceso al Registro de la Propiedad. Su inscripción evita que terceros adquirentes aleguen tercería registral pues les es oponible lo que consta inscrito. Arts. 38 y 53 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. secs. 2201 y 2256. De igual forma, la posibilidad de inscripción asegura que quien adquiera sin que conste en el Registro la existencia del edificante estará protegido contra el consiguiente reclamo de indemnización, siempre que sea tercero de buena fe. La buena fe del tercero adquirente es un requisito obvio para reclamar la protección que la Ley Hipotecaria y del Registro de la Propiedad otorga en su Artículo 105 (30 L.P.R.A. sec. 2355),(14) por lo que si se llegase a probar que el nuevo adquirente conocía sobre la existencia de las mejoras, no le cobija dicha protección, aun cuando no conste inscrito el hecho de la construcción. Consejo v. Villa Edamorga, 161 D.P.R. 785 (2004); Dennis, Metro Invs. v. City Fed. Savs., 121 D.P.R. 197 (1988).
IV
Del reseñado conjunto de artículos y doctrinas acerca de la accesión y la posesión se puede colegir su propósito restaurador dentro del marco de una controversia posesoria entre un propietario y un poseedor edificante de buena fe. Es decir, dichos preceptos otorgan remedios en equidad dentro del contexto específico de disputas por interdictos posesorios o demandas de accesión.
*131 Los Artículos 380 al 387 de nuestro Código Civil, 31 L.P.R.A. sees. 1466-1473 —relativos a los derechos del poseedor— presuponen que alguien le ha vencido o sucedido en la posesión, pero no concretan la causa por la que es vencido o sucedido. L. Diez-Picazo y A. Gullón, Sistema de Derecho Civil, 6ta ed. Madrid, Ed. Tecnos, Vol. III, pág. 135. Los autores concluyen que estos artículos deben tener tanto un valor general, que cederá ante la existencia de regulación concreta de la liquidación de un estado posesorio, como un valor supletorio para remediar la oscuridad o insuficiencia de tal regulación específica.
Según Diez-Picazo y Gullón,
[c]uando el tercero opera sobre el terreno ajeno en virtud de una relación jurídica con su dueño que le faculta para ello que posteriormente se extingue, anula o resuelve ... la situación debe regirse por las [normas] de aquella relación y, en su defecto, por las [normas] generales de los artículos ... sobre liquidación de estados posesorios. Diez-Picazo y Gullón, op. cit., págs. 178-179.
El problema que nos ocupa tiene la particularidad de que no se trata de una controversia posesoria ni de una demanda de accesión. Siguiendo el razonamiento anterior, y según lo discutido sobre los derechos de un poseedor de buena fe ante terceros adquirentes, debemos determinar los derechos del optante que ha entrado en la posesión del bien sometido a opción y, tras haber efectuado mejoras, no ejerce su derecho de opción.
Se ha reconocido la existencia del contrato de opción de compra a pesar de que no está regulado por el Código Civil. Para la interpretación del alcance y la naturaleza del contrato atípico de opción rigen, no las disposiciones sobre la compraventa, sino las que gobiernan las obligaciones y los contratos en general. Rosa Valentín v. Vázquez Lozada, 103 D.P.R. 796, 804 (1975).
Jurisprudencialmente se han incorporado a nuestro ordenamiento los elementos que definen dicho pacto como consensual, mediante el cual una parte (promitente) le *132 concede a otra parte (optante) el derecho exclusivo a decidir de manera unilateral si comprará determinado bien inmueble que le pertenece al promitente dentro de un período de tiempo definido por las partes. Hemos establecido reiteradamente que el contrato de opción es preparatorio, encaminado al eventual otorgamiento de un contrato de. compra y venta. S.L.G. Irizarry v. S.L.G. García, 155 D.P.R. 713 (2001).
Los elementos esenciales del contrato de opción son los siguientes: (1) se concede al optante la facultad de decidir unilateralmente si celebrará el contrato principal (la compra y venta) sin ninguna obligación de su parte; (2) dicha concesión tiene carácter de exclusividad; (3) se establece un plazo para ejercitar la opción, y (4) no existe otra condición que no sea la voluntad del optante. En nuestra jurisdicción se ha adoptado la idea de que a pesar de ser un contrato consensual, la opción de compra es un contrato unilateral —porque el optante no está obligado a comprar— contrario al caso del promitente que sí está obligado a venderle al optante, si éste así lo decide. S.L.G. Irizarry v. S.L.G. García, supra.
Con especial relación a la controversia particular que nos ocupa, Diez-Picazo, al comentar la Sentencia del Tribunal Supremo de España de 22 de abril de 1972, Col. Leg. Núm. 223, pág. 312, explica que la ocupación del bien sometido a opción “prolongada a lo largo de un cierto lapso de tiempo” presenta cierta dificultad, pues no puede calificarse la ocupación del piso y entrega de la cosa, evidentemente, como nacida de un contrato de compraventa que no se ha dado ni se sabe que se dará. L. Diez-Picazo, Estudios sobre la Jurisprudencia Civil, 2da ed., Madrid, Ed. Tecnos, 1975, Vol. II, pág. 27. Por el contrario, dicha entrega posesoria requiere, según advierte Diez-Picazo, una calificación jurídica distinta “que no se ve muy claro cual podría ser”, aunque “[n]o parece una ocupación puramente precaria, *133 pues está fundada en un título jurídico distinto del de la mera concesión o voluntad benévola del propietario”. Id.
José Ángel Torres Lana aclara el panorama y expone dos posibles instancias en las que se puede dar el fenómeno posesorio por el optante. Explica el autor que, por un lado,
[e]l hecho tendrá lugar necesariamente cuando la opción se yuxtaponga a otro contrato que implique por sí solo una transferencia posesoria. Este otro contrato constituye en tales casos el título legitimador de la posesión del optante; no lo es el contrato de opción. Torres Lana, op. cit., pág. 217.
Un ejemplo que da el autor sobre esta situación particular es el contrato de arrendamiento con opción a compra donde “el optante adquiere la posesión en virtud de su condición de arrendatario y como consecuencia obligada del contrato de arrendamiento”. Torres Lana, op. cit., pág. 217.
Por otro lado, Torres Lana habla de una segunda modalidad en la posesión del optante, presente en los casos en que sus intereses requieran la posesión objeto del contrato “con independencia de cualquier otra forma de cobertura contractual”. Torres Lana, op. cit., pág. 217. Dice el autor que este supuesto “se dará con más frecuencia cuando el contrato definitivo sea de naturaleza translativa”, aunque no necesariamente. íd., págs. 217-218. Torres Lana encuentra la razón de ser de esta modalidad posesoria en el principio liberal y rector en materia de contratos codificado en el Artículo 1207 de nuestro Código Civil, que establece que los contratantes pueden establecer los pactos, las cláusulas y las condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral ni al orden público. 31 L.P.R.A. see. 3372. Dice el autor que “las partes no sólo son libres para pactar o no el desplazamiento de la posesión, sino también para conformar éste a su arbitrio con la extensión y alcance que tengan por conveniente”, ello al punto de que no se configure la tradición, íd., pág. 219. En este contexto, el optante que posee el bien *134 sometido a opción “tiene un título legitimador de esa tenencia, que es el acto convenido en el contrato”. íd., pág. 221. Por lo que “[t]anto [el] fundamento [de su posesión,] como su alcance y ámbito” se encuentran en las cláusulas contractuales. íd., pág. 221.
Más adelante en su estudio sobre el contrato de opción, el mentado autor califica la posesión del optante como “posesión civil, en nombre propio y, en principio, de buena fe”. Torres Lana, op. cit., pág. 222. Aclara el autor que “[rjesulta evidente que el optante no puede poseer [en] concepto de dueño de la cosa”, pues el dominio pertenece al concedente, pero “[s]u especial iuspossessionis presenta ... una textura de mayor consistencia que la que derivaría de la simple posesión en concepto distinto del de dueño”. íd., pág. 224. Para Torres Lana, el optante ostenta una “eventual vocación a adquirir”, por lo que sus actos posesorios “pueden llegar mucho más allá que los de un poseedor no dominical”. íd., pág. 224. El autor aconseja que los derechos del optante poseedor al momento de cesar en la posesión se configuren convencionalmente y, en defecto de pacto, “acaso el principio de enriquecimiento sin causa sea el cauce idóneo para remediar el desequilibrio patrimonial provocado”. íd., pág. 223.
V
En el caso de autos la peticionaria fallecida entró en la posesión del bien inmueble en el contexto de un contrato de opción cuya naturaleza está arraigada a la autonomía de la voluntad. Con el transcurso del tiempo, la señorita Collazo no pudo ejercer su opción, pero no por esto perdió su condición de poseedora y edificante de buena fe y, como tal, le corresponde a ella y a sus sucesores el derecho de indemnización concedido a las personas que edifican y mejoran los inmuebles ajenos con permiso o aquiescencia del propietario.
*135 Durante su posesión, la señorita Collazo llevó a cabo obras de construcción que el Tribunal de Primera Instancia calificó como una reconstrucción y remodelación del inmueble. Dicho proyecto de reconstrucción y remodelación incluyó la incorporación de mejoras cuyos gastos fueron considerados gastos útiles por el Tribunal de Primera Instancia. Como ya hemos discutido, toda obra o mejora efectuada en terreno ajeno puede ser objeto de accesión. Anteriormente en esta opinión explicamos que cualquier tipo de construcción cae bajo el régimen de accesión aplicable a las edificaciones. A esos efectos, mencionamos que en Freyre v. Blasini, supra, calificamos la construcción de un horno como una edificación. En Sucn. Echegaray v. Esso Standard Oil Co., supra, ofrecimos ejemplos de los distintos tipos de construcción que pueden ser objeto de accesión, pero no tuvimos la oportunidad de abundar sobre los efectos jurídicos de la accesión en los distintos tipos de obra. Aprovechamos para establecer que, si bien toda construcción en propiedad ajena es objeto de accesión, no toda obra o mejora efectuada en un bien inmueble ajeno que luego es enajenado es oponible frente a tercero para efectos de indemnización. Resolvemos que esta posibilidad se debe reservar para obras o mejoras de carácter sustancial y permanente como las construidas en el caso de autos.
La determinación sobre qué tipo de mejora es sustancial y permanente y, por lo tanto, oponible frente a quien no ostente el rango de tercero de buena fe, se deberá hacer caso a caso.(15) Sin embargo, no podemos olvidar que cuando se lleven a cabo mejoras simples como parte de un proyecto de construcción donde se efectúen otras mejoras sustanciales y permanentes oponibles a tercero, las prime *136 ras quedarán sujetas al mismo régimen de las segundas, puesto que en nuestro derecho de propiedad lo accesorio sigue a lo principal.
Si bien es cierto que en el caso que nos ocupa el derecho que reconocemos no trascendió al ámbito registral —pues la edificante y poseedora nunca lo inscribió— también es cierto que los recurridos aceptaron que conocían sobre la existencia de dichas mejoras antes de adquirir el bien inmueble. Los recurridos no pueden alegar que son terceros de buena fe. Su total conocimiento acerca de la reconstrucción y remodelación que se llevó a cabo en la propiedad, y de las circunstancias en que el inmueble fue vendido sin indemnizar a la poseedora edificante, les impide dicha protección, pues sabían que sobre el inmueble que estaban adquiriendo pesaba una carga.
Como se ha discutido anteriormente, nuestro Código Civil, en su Artículo 297, supra, favorece al propietario de un inmueble donde se ha edificado o que se ha mejorado de buena fe, al ofrecerle la opción de escoger entre abonar el costo de los materiales y la mano de obra, o abonar el valor que haya adquirido el inmueble por las mejoras. En Viera v. Arizmendi, supra, pág. 48, en el contexto de una acción de accesión, nos expresamos con relación al alcance de la naturaleza alternativa de la obligación de indemnizar al poseedor de buena fe dispuesta en el Artículo 297, supra. Aclaramos que si no se presenta prueba en el tribunal inferior en cuanto al valor aumentado del terreno luego de efectuadas las mejoras, pero se presenta prueba del costo de los materiales y de la mano de obra, la controversia se debe limitar al costo original de dichos materiales y mano de obra como factor para establecer la indemnización, y a eso debe contraerse la sentencia.(16) Nos referimos en aque *137 lia ocasión a la Sentencia de 17 de marzo de 1897 del entonces Tribunal Contencioso-administrativo de España(17) citada por Manresa, en la cual se decidió que “no haciendo uso el propietario del derecho de opción que le concede el artículo 453, [equivalente a nuestro Artículo 382] lo más justo es abonar el importe de los gastos útiles o mejoras hechas en la finca”. Manresa, op. cit, 1972, T. IV, Vol. I, págs. 350-351. Estas fueron nuestras palabras:
[D]ebe surgir de los autos que el dueño del terreno, ... haya ejercitado la opción —Manresa, ob. cit., pág. 317— y que así lo haya expresado formalmente, a los fines de que la otra parte tenga la oportunidad de prepararse adecuadamente en cuanto a los elementos de prueba envueltos en esa segunda modalidad de la opción. Venta v. Ferrara, [195 La 334, 196 So 550, 554]; Foster v. Meyers, 117 La 216, 41 So 551; Hutchinson v. Jamison, 38 La. Ann 96. Si el demandante no ha ejercitado la opción en esa forma o si no se ha presentado prueba en el tribunal inferior en cuanto al valor aumentado del terreno, presentándose prueba del costo de los materiales y de la mano de obra, la sentencia debe referirse exclusivamente a dicho costo de los materiales y mano de obra. Hutchinson v. Jami-son, supra; Manresa, ob. cit., pág. 317.... Bajo esas circunstancias, la controversia debe limitarse exclusivamente al costo original de los materiales y la mano de obra y no procede consideración alguna de la depreciación o del “provecho útil” de la casa. Viera v. Arizmendi, supra, pág. 48.
En el caso ante nuestra consideración, el Tribunal de Primera Instancia le adjudicó entera credibilidad a la prueba presentada sobre las mejoras que hizo la hija de los peticionarios al remodelar y reconstruir el inmueble objeto de este litigio. Los testimonios, los cheques y las facturas sobre los gastos reales en que incurrió la señorita Collazo fueron admitidos como evidencia del monto de los gastos a ser indemnizados por concepto de mejoras. Esta prueba no fue refutada efectivamente. Repetidamente hemos establecido que en asuntos de credibilidad de la prueba testifical *138 concederemos gran deferencia a las determinaciones de hecho efectuadas por los tribunales de instancia. Las decisiones de los foros apelativos están basadas únicamente en un examen del expediente del caso. Por eso, en ausencia de error, pasión, prejuicio y parcialidad, la apreciación de la prueba hecha por el Tribunal de Primera Instancia no se debe cuestionar, y el foro apelativo no debe prescindir de y permutar por sus propias apreciaciones las determinaciones tajantes y ponderadas del foro de instancia. Véanse: Argüello v. Argüello, 155 D.P.R. 62 (2001); Trinidad v. Chade, 153 D.P.R. 280 (2001); Rolón v. Charlie Car Rental, Inc., 148 D.P.R. 420 (1999); López Vicil v. ITT Intermedia, Inc., 142 D.P.R. 857, 864 (1997).(18)
Por consiguiente, no habiéndose demostrado que el Tribunal de Primera Instancia actuó en este caso movido por pasión, prejuicio, parcialidad, ni incurrió en error manifiesto, y al estar ese tribunal en mejor posición que este foro para dirimir la prueba, sus determinaciones deben prevalecer “a menos que la apreciación de la evidencia se aleje de la realidad fáctica o la prueba sea inherentemente imposible o increíble”, lo cual tampoco sucede en esta instancia. Pueblo v. Maisonave Rodríguez, 129 D.P.R. 49, 63 (1991). Considerando la prueba presentada y admitida en el foro inferior, y no habiéndose presentado prueba alguna para refutar la de los peticionarios, debemos adjudicar de acuerdo con el razonamiento establecido en Viera v. Arizmendi, supra.
Los gastos por mejoras, que según determinó el Tribunal de Primera Instancia ascendieron a $29,472, aumentaron el valor de la propiedad de los recurridos, por lo que éstos se han beneficiado de la reconstrucción y remodelación que efectuó la fenecida en la propiedad objeto de este litigio. Además, quedó probado en el foro de primera ins *139 tanda que los recurridos tenían conocimiento de las mejoras en las que había invertido su entonces amiga, la fenecida hija de los peticionarios. Los recurridos no pueden alegar ser terceros regístrales, pues carecen del requisito de la buena fe. Por lo tanto, consecuente con el carácter real de las obras de buena fe efectuadas en suelo ajeno, resolvemos que como dueños actuales del inmueble, los recurridos están obligados a indemnizar a quien de buena fe incorporó, tanto mejoras sustanciales como mejoras simples que forman parte del mismo proyecto de construcción.
Aun cuando no reconociéramos los derechos antes ex-puestos, no podemos obviar la esencia equitativa que conforma el articulado que regula los derechos de constructores en propiedad ajena ni su espíritu como disuasivo del enriquecimiento injusto. Como hemos expresado en anteriores opiniones, al considerar la doctrina de enriquecimiento injusto se debe tener en mente que se trata de una doctrina o principio general de derecho que puede aplicarse a situaciones muy distintas entre sí, siempre y cuando tengan en común un elemento: el que de no aplicarse se perpetraría la inequidad de que alguien se enriqueciese injustamente en perjuicio de otro. Se trata de una doctrina general basada en la equidad, reconocida por el derecho de todos los países civilizados, que domina muchas relaciones de derecho privado y cada día dominará más, susceptible de aplicación en múltiples casos que son imposibles de prever. Se le considera como un principio general que opera en todo el ámbito del Derecho, casi tan antiguo como el Derecho mismo. El enriquecimiento injusto es un corolario del concepto de equidad, lo cual equivale a decir que es un corolario del concepto de la justicia misma. Silva v. Comisión Industrial, 91 D.P.R. 891 (1965); Colón v. Glamorous Nails, 167 D.P.R. 33 (2006).(19) Por tales razones, y *140 aún prescindiendo de las consideraciones estatutarias discutidas en nuestra ponencia, consideramos que quien adquiere un inmueble mejorado sin estar protegido por los principios de la buena fe, debe reponer los gastos correspondientes al optante poseedor y edificante.
Según lo anterior, y de acuerdo con el carácter equitativo y restaurador de los artículos relativos a la posesión, a los derechos del poseedor ante la accesión, y a la condición de poseedor de buena fe de la optante en este caso, concluyo que erró el Tribunal de Apelaciones al desestimar la demanda de los peticionarios. Por tales consideraciones me uno a la decisión de revocar parcialmente la sentencia de ese foro y ordenar a los recurridos que paguen a los peticionarios $29,472 por concepto de los gastos en que incurrieron en las mejoras al inmueble de su propiedad.

 El Tribunal de Primera Instancia calificó de esta manera el proyecto de construcción que llevó a cabo la señorita Collazo.

 La Tercera Partida, que habla sobre la justicia y de cómo juzgar ordenadamente en cada situación litigiosa, aborda en su Título XXVIII el régimen de indemnización en casos de construcción de buena fe en terreno ajeno. La Ley XLI de dicho Título es el antecedente de nuestro Artículo 297, y establece que la indemnización en la accesión se da en el caso de obras nuevas. La Ley XLIIII del mismo Título es el antecedente de nuestro Artículo 382, y establece que en el caso de indemnización al poseedor de buena fe, la indemnización es por reparaciones o renovaciones de lo ya existente. Como he discutido, el legislador español optó por apartarse de este régimen, pues en el ordenamiento civil español la accesión es una extensión del dominio, por ella no se adquiere algo nuevo, sino una extensión de lo que ya es propio. Según Manresa, aunque las Siete Partidas se acepten como antecedentes del articulado de accesión, el Código Civil español simplificó y mejoró el “casuismo” que en ellas se manifestaba. J.M. Manresa, Comentarios al Código Civil Español, 5ta ed., Madrid, Ed. Reus, 1920, T. III, pág. 208.

 En un principio, nuestro Artículo 297 era idéntico al Artículo 361 español, pero tras la aprobación de la Ley Núm. 56 de 16 de junio de 1964, se enmendó dicho artículo y se estableció un método separado para calcular el monto de la indemnización debida al edificante de buena fe. Sin embargo, la enmienda se hizo por razones de justicia socioeconómica, por lo que la configuración jurídica del artículo permanece análoga al homólogo español.

 Alonso Pérez indica que está de acuerdo con las ideas de E. Serrano Alonso expuestas en La accesión bien mueble a inmueble: una interpretación del artículo 361 Código Civil, Madrid, Ed. Rev. Der. Privado, 1981, págs. 676-677.

 Además de las aquí mencionadas, el autor cita la Sentencia de 3 de enero de 1905, donde según el autor se considera objeto de la accesión la colocación de una máquina unida al suelo de manera indisoluble, y la Sentencia de 10 de diciembre de 1980, donde según el autor, la accesión se da por la realización de pasos y caminos. Similar es el caso de la Sentencia de 20 de mayo del 1977.

 Alonso Pérez se refiere al trabajo de Sanz Fernández titulado Edificación en suelo ajeno: sus problemas, Curso de conferencias 1947 en el Ilustre C.N. de Valencia, Valencia, 1948, pág. 121.

 Partimos de una distinción entre lo que es la posesión como hecho, que es la llamada posesión natural, y la posesión como derecho, que es la posesión civil.

 El concepto del enriquecimiento injusto está disperso en el articulado del Código Civil y es uno de los principios fundamentales que lo informan. Así lo recalcamos en Silva v. Comisión Industrial, 91 D.P.R. 891 (1965). Véase Guaroa Velázquez, Las obligaciones según el derecho puertorriqueño, Santurce, Equity de Puerto Rico, Inc., 1964, pág. 133, donde el autor apunta, como ejemplo de lo anterior, los artículos relativos a la accesión y la posesión.

 Maeso v. The Chase Manhattan Bank, 133 D.P.R. 196, 202 (1993).

 Así le llama Vélez Torres en su obra Curso de Derecho Civil, 4ta ed., Madrid, Ed. Offirgraf, 2002, T. II, pág. 46.

 Scaevola califica la fórmula de nuestros Artículos 262 y 264 como una “más adecuada quizá para un trabajo filosófico sobre los bienes”. Q.M. Scaevola, Código Civil comentado y concordado extensamente, 5ta ed., Madrid, Ed. Reus, 1949, T. VI, pág. 214.

 Ya ha advertido Puig Brutau que los derechos reales y de crédito se hallan en una situación inestable que les impulsa a cierta regresión hacia la figura opuesta. J. Puig Brutau, Fundamentos del Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1971, T. Ill, Vol. 1, pág. 14.

 Ignacio Rivera García define el término carga como “[djerechos reales que gravan los inmuebles”. I. Rivera García, Diccionario de Términos Jurídicos, 2da ed., New Hampshire, Ed. Equity, 1985, pág. 33.

 “La buena fe del tercero se presume siempre mientras no se prueba que al adquirir conocía la falta de exactitud del Registro.”

 Mediante el testimonio de la peticionaria, Sra. Ana Vázquez, al cual el foro de primera instancia confirió entera credibilidad, se probaron hechas ampliaciones estructurales tales como una terraza techada, columnas y pisos. Además, se probó que, entre otras cosas, se remodelaron completamente la cocina, los baños y un cuarto. Dichas obras, al igual que las anteriormente mencionadas, constituyen este tipo de mejora sustancial y permanente.

 Véase también la parte dispositiva de nuestra opinión en Colón v. Club Rotario, 64 D.P.R. 578 (1945), donde el propietario del terreno en que se construyó de buena fe se había negado en su demanda de desahucio a indemnizar al edificante. Allí concluimos que procedía el reembolso de los gastos en materiales y los de mano de obra.

 La Ley de 5 de abril de 1905 transfirió la jurisdicción de este tribunal a las Salas 3ra y 4ta del Tribunal Supremo español.

 Claro está, ello no implica que gocen de credenciales de inmunidad ante la función revisora de este Tribunal. Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987); Vélez v. Srio. de Justicia, 115 D.P.R. 533, 545 (1984); Vda. de Morales v. De Jesús Toro, 107 D.P.R. 826, 829 (1978).

 Véanse, además: E.L.A. v. Soto Santiago, 131 D.P.R. 304 (1992); A.E.E. y A.A.A. v. P.N.P., 128 D.P.R. 294 (1991); Ortiz Andújar v. E.L.A., 122 D.P.R. 817 (1988); Morales v. Municipio de Toa Baja, 119 D.P.R. 682 (1987); *140 Plan Bienestar Salud v. Alcalde Cabo Rojo, 114 D.P.R. 697 (1983); Plan Bienestar Salud v. Alcalde Cabo Rojo, 114 D.P.R. 697 (1983); Freyre v. Blasini, 68 D.P.R. 211 (1948); Compañía Popular v. Corte, 63 D.P.R. 121 (1944); Moringlane & Lledó v. Skerret, 44 D.P.R. 874 (1933).